NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KA 0076

STATE OF LOUISIANA

VERSUS

TERRENCE MICHAEL SOUTHALL

*Judgment Rendered:* SEP 2 7 2019

* * * * * * * *

Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Case No.755096

The Honorable Juan C. Pickett, Judge Presiding

* * * * * * * *

Lieu T. Vo Clark
Mandeville, Louisiana

Counsel for Defendant/Appellant
Terrence Michael Southall

Terrence M. Southall
Lake Providence, Louisiana

Defendant/Appellant
Pro Se

Joseph L. Waitz, Jr.
District Attorney
Ellen Daigle Doskey
Assistant District Attorney
Houma, Louisiana

Counsel for Appellee
State of Louisiana

* * * * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**THERIOT, J.**

Defendant, Terrence Southall, was charged by bill of information with possession with intent to distribute methamphetamine, a violation of La. R.S. 40:967 (count one), and unlawfully receiving or acquiring proceeds derived from drug transactions, a violation of La. R.S. 40:1041 (count two). He pled not guilty. Following a bench trial, defendant was found guilty as charged on count one and acquitted on count two. The trial court ultimately adjudicated defendant a fourth-offense habitual offender and imposed a term of 20 years imprisonment at hard labor. Defendant now appeals. For the following reasons, we reverse the conviction and the habitual offender adjudication. We vacate the sentence and order defendant discharged.

## STATEMENT OF FACTS

In June 2017, bounty hunter Joshua Champagne was hired by a bail bondsman to locate Terrence Southall ("defendant"), because defendant's bail bonds would soon be forfeited due to some outstanding arrest warrants. After receiving a tip as to where defendant would be, Champagne conducted three days of surveillance on a trailer in the Johnson Ridge area of Terrebonne Parish. While keeping the address under observation, he saw defendant driving a brown Audi and entering Johnson Ridge at least three times. Champagne observed defendant entering the trailer once. Because he could not himself detain defendant, Champagne contacted Julio Escobar, a uniform patrol officer employed by the Terrebonne Parish Sheriff's Office ("TPSO") to assist in the matter. After verifying that there were active warrants for defendant's arrest, Escobar and two other TPSO officers went to the trailer to apprehend defendant.

Upon his arrival at the trailer with the other officers, Escobar knocked on the trailer's door. Co-defendant John Gage answered the door and quickly exited the trailer, closing the door behind him. Escobar immediately smelled the odor of

marijuana emanating from the trailer. When asked whether anyone else was in the trailer, Gage repeatedly stated that only children remained inside. Escobar saw someone peek through the blinds in one of the trailer's windows and heard continued movement from inside the trailer. Gage was kept outside while Escobar contacted the narcotics division for further instructions, at which point Escobar was advised to perform a protective sweep to secure the trailer and told that a narcotics agent was going to be dispatched.

When Escobar attempted to enter the trailer, he discovered that the door had been locked from the inside. The door was eventually opened by another adult, co-defendant Lawrence James. No other adults were immediately located in the trailer during the protective sweep, nor did anyone else exit from the rear of the trailer. Although it appears that there were children found in the trailer, it is not clear from the record when those children were removed from the trailer.

Shortly after the protective sweep was completed, Gage's fiancé Yolanda Tillman arrived at the residence. Tillman informed the officers that she was the owner of the trailer and that the children were hers. Soon after, narcotics agent Michael Navarre with the Terrebonne Parish Narcotics Division arrived at the scene, as well as several other narcotics agents. Navarre waited for approximately one hour in the living room with Tillman and the children for a search warrant to be signed.

About a half-hour after the search warrant was executed, defendant was found in the back of the trailer. Defendant had car keys in his pocket belonging to the Audi, which was registered to Gage. The search also revealed about one pound of methamphetamine,[1] a small bag of marijuana, and about $17,500 in cash, all of which were found wrapped in rubber bands just inside the ceiling of a child's bedroom. Inside the kitchen cabinets, the narcotics agents recovered several small

---

[1] Testimony was adduced at trial that the "street value" of one pound of methamphetamine was approximately $89,000.

3

bags of methamphetamine along with containers of MSM, a dietary supplement for horses that is frequently used for "cutting" methamphetamine. Navarre later testified that the volume of narcotics and money indicated this was not "a one-man operation," but instead was a "major operation." No contraband or money was found on defendant's person, nor in the Audi. No fingerprints were found on the contraband discovered in the trailer.

## COUNSELED ASSIGNMENTS OF ERROR #1 & 2 AND PRO SE ASSIGNMENT OF ERROR #1: INSUFFICIENT EVIDENCE AND DENIAL OF POST-VERDICT JUDGMENT OF ACQUITTAL

In his related counseled assignments of error, defendant contends that the evidence was insufficient to convict him of possession with intent to distribute methamphetamine, and that the trial court erred in denying his motion for post-verdict acquittal. Defendant argues that there was no evidence that he was aware of the drugs and cash found in the ceiling, nor was there any direct evidence linking him to the drugs. Moreover, defendant asserts that there was no evidence that he was "hiding" in the back of the trailer.

In a pro se supplemental brief, defendant further asserts that the evidence was insufficient because 1) Yolanda Tillman testified that defendant did not live in the residence; 2) Gage's wallet and drugs were found in Gage's own home; 3) cell phone records were "dumped" and there were "no records of [defendant's] connectivity to the residents;" and 4) defendant being found not guilty on count two indicated that there was insufficient evidence to link him to the methamphetamine found next to the money.

The state argues that the evidence presented was sufficient to demonstrate that defendant "had dominion and control over the drugs found hidden in the trailer." The state reasons that, given the apparent connection between defendant and Gage, defendant had sufficient access to the drugs as to constitute possession.

4

A one day bench trial was held on May 9, 2018. The first witness called by the state was Julio Escobar, a uniform patrol officer employed by the TPSO. Escobar testified that, on June 22, 2017, he was contacted by Joshua Champagne, the bounty hunter who had been hired to locate defendant. After meeting with Champagne, Escobar verified that there were active warrants for defendant's arrest and contacted two additional units, Seth Boudreaux and Michael Milstead, to assist him in apprehending defendant. Boudreaux and Milstead met Escobar at a trailer indicated by Champagne, which was located in the Johnson Ridge area of Terrebonne Parish. When Escobar, Boudreaux, and Milstead arrived on the scene, Escobar knocked on the door of the trailer in an attempt to make contact with anyone inside. Escobar testified that, after a short amount of time, John Gage opened the door and quickly exited the trailer. When the door opened, Escobar began to smell marijuana. Escobar further testified that he saw someone peek through the blinds and heard movement inside the trailer. After interacting with Gage for five to ten minutes, Escobar testified that he contacted Terry Daigle, who worked for the Terrebonne Parish Narcotics Division. Escobar testified that Daigle advised that Escobar and Boudreaux were to secure the residence and that Daigle would send an agent to the trailer. Escobar stated the officers attempted to enter the trailer, but found the door to be locked. Although Gage had repeatedly told the officers that only children were inside the trailer, the door was opened from the inside by Lawrence James. Escobar stated that Milstead immediately took James into custody. The officers then performed a protective sweep of the trailer, at which point Yolanda Tillman arrived and informed the officers that she was the homeowner and that the children were hers. Soon after, agent Michael Navarre with the Terrebonne Parish Narcotics Division arrived at the scene, as well as other narcotics agents. At this point, Escobar remained outside of the trailer. Later, while the narcotics agents were executing their search warrant, Escobar saw a

narcotics agent, Russell Madere, exit the trailer with defendant. Escobar stated he was not inside the trailer when defendant was found. On cross examination, Escobar testified that the trailer had two or three bedrooms.

The second witness called by the state was narcotics agent Michael Navarre. Navarre testified that he obtained a search warrant approximately one hour after arriving at the trailer. While waiting for the search warrant, Navarre testified that he waited in the living room with Yolanda Tillman and the children. Once he received the search warrant, Navarre remained in the kitchen and acted as evidence custodian while several other narcotics agents, including Russell Madere, began to execute the search warrant. Navarre testified that approximately one pound of methamphetamines, a small bag of marijuana, and approximately $17,500 in cash were found in the ceiling of a child's bedroom. Additionally, two bottles of MSM and several small bags of methamphetamines were found in the kitchen. Navarre further testified that, approximately thirty minutes after the search started, Madere verbally announced that he had someone in custody in the back of the trailer and walked out with defendant. Navarre stated that no contraband was found on defendant. The keys to an Audi owned by Gage were found on defendant, but no contraband was found in the Audi. Navarre did not testify as to which room in the trailer defendant was found. Madere did not testify at trial.

The third witness called by the state was Joshua Champagne, the bounty hunter hired to locate defendant. Regarding defendant, Champagne testified that he surveilled defendant for three days. Champagne further testified that when he found defendant, defendant was driving a brown Audi. Champagne testified that he witnessed defendant going in and out of the Johnson Ridge area at least three times in the three days he surveilled defendant. Champagne observed defendant entering Gage's trailer only once. At that point, Champagne contacted TPSO. Champagne testified that he did not see defendant engaging in any drug activity.

The fourth and final witness[2] was Yolanda Tillman, who is engaged to Gage. Tillman testified that the trailer belonged to her and that she lived there with her children. She further testified that she knew defendant and knew that defendant had spent time with Gage, but that she did not know whether defendant had been with Gage anytime during the week prior to the arrests.

In finding defendant guilty on count one, the trial court noted the large amount of contraband and other evidence located during the search, and that the contraband found was evidently part of a "large operation." Moreover, the court viewed as important the fact that defendant had been seen coming and going from the trailer over the course of several days in addition to driving Gage's car. The court observed that the drugs appeared to have been hastily concealed in the ceiling, and that no other adults came in or out of the home after Gage was taken into custody.[3] Consequently, the court opined defendant had "complete custody, and dominion and control over the residence." Finally, in finding defendant guilty, the court found that "[t]he evidence was sufficient to show that the amount of the narcotics was packaged, and the weight of it was for – was consistent with distribution," and that defendant was the only adult in the home for "nearly an hour and half." On acquitting defendant of count two, the trial court found that there was no evidence that the drugs found on the premises "were actually sold, and that [the cash] was proceeds from a drug transaction."

To support a conviction for possession with intent to distribute a controlled dangerous substance, the State had to prove beyond a reasonable doubt that defendant: 1) possessed the controlled dangerous substance; and 2) had an intent to distribute the controlled dangerous substance. La. R.S. 40:967(A)(1); **State v.**

---

[2] The defense did not call any witnesses.

[3] However, we note that Lawrence James was found in the home and brought out by the TPSO. We further note that Yolanda Tillman and several law enforcement officers entered the home after Gage was taken into custody and remained in the home until the search warrant was obtained.

**Howard**, 2018-0317 (La. App. 1st Cir. 9/21/18), 258 So.3d 66, 74, writ denied, 2018-1650 (La. 5/6/19), 269 So.3d 692. The State is not required to show actual possession of the narcotics by a defendant in order to convict; constructive possession is sufficient. A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. Also, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. However, the mere presence in the area where narcotics are discovered or mere association with the person who controls the drug or the area where it is located is insufficient to support a finding of constructive possession. **State v. Forrest**, 2016-1678 (La. App. 1st Cir. 9/21/17), 231 So.3d 865, 870-71, writ denied, 2017-1683 (La. 6/15/18), 257 So.3d 687 (citing **State v. Smith**, 2003-0917 (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 799). When it cannot place the defendant in actual possession of contraband drugs, the State must establish that he had dominion and control over the contraband, and each case turns on its particular facts. **State v. Harris**, 94-0970 (La. 12/8/94), 647 So.2d 337, 338-39 (per curiam).

Factors considered in determining whether or not a defendant exercised dominion and control over a drug include: 1) defendant's knowledge that illegal drugs are in the area; 2) defendant's relationship with any person found to be in actual possession of the substance; 3) defendant's access to the area where the drugs were found; 4) evidence of recent drug use by defendant; 5) defendant's physical proximity to the drugs; and 6) any evidence that the particular area was frequented by drug users. **State v. Corkern**, 2018-1000 (La. App. 1st Cir. 12/21/18), 2018 WL 6718603 at *3 (unpublished), writ denied, 2019-0194 (La. 4/22/19), 268 So.3d 303 (citing **State v. Harris**, 94-0696 (La. App. 1st Cir.

8

6/23/95), 657 So.2d 1072, 1074-75, writ denied, 95-2046 (La. 11/13/95), 662 So.2d 477).

Regarding the first factor, there is no evidence in the record indicating that defendant had any knowledge of the seized drugs in the area. As to the second factor, no one was found to be in actual possession of the contraband. See **State v. Price**, 2010-701 (La. App. 5th Cir. 5/10/11), 66 So.3d 495, 502, writ denied, 2011-1221 (La. 11/23/11), 76 So.3d 1153 ("A person is in actual possession when the person has an object in their possession or on their person in such a way as to have direct physical contact with and control of the object."). See also **State v. Walker**, 32,342 (La. App. 2d Cir. 9/24/99), 747 So.2d 133, 138. Regarding the third factor, defendant was seen on one occasion entering the trailer. No one testified that the defendant was found in the room that the illegal drugs were hidden. In respect to the fourth factor, there is no evidence in the record indicating recent drug use by defendant. As to the fifth factor, the drugs were found in a children's bedroom and in the kitchen. Although there is testimony indicating that defendant was found in the back of the trailer, there is no testimony stating that defendant was found in the same room that the contraband was found. Finally, regarding the sixth factor, there is no evidence in the record establishing that drug users were frequently visiting the trailer.

The record clearly establishes that police found defendant in a trailer that contained one pound of methamphetamine, along with paraphernalia involved with its sale. However, there is a lack of evidence linking defendant to the narcotics or paraphernalia. No drugs or cash were found on his person, nor were they found in Gage's brown Audi that defendant had been seen driving. There was no indication that defendant was aware of the drugs in the ceiling of the child's bedroom or elsewhere in the trailer. The evidence established that defendant entered the trailer once in the three days prior to the arrest. In short, the only factor lending credence

9

to the State's allegation that defendant had dominion and control of the methamphetamine was that defendant was in the trailer while police obtained a search warrant. Mere presence inside the trailer does not alone render defendant liable for the methamphetamine found hidden in the ceiling. See, e.g., **State v. Bell,** 566 So.2d 959, 960 (La. 1990) (per curiam); **State v. Cann,** 319 So.2d 396, 400 (La. 1975); **State v. Hunter,** 2009-1487 (La. App. 3d Cir. 6/2/10), 41 So.3d 546, 555-59; **State v. Harris,** 597 So.2d 1105, 1108 (La. App. 2d Cir. 1992); cf. **State v. LaMothe,** 97-1113 (La. App. 5th Cir. 6/30/98), 715 So.2d 708, 712, cert. granted in part, cause remanded, 98-2056 (La. 11/25/98), 722 So.2d 987 (per curiam); **State v. Fisher,** 94-2255 (La. App. 1st Cir. 12/15/95), 669 So.2d 460, 462-63, writ denied, 96-0958 (La. 9/20/96), 679 So.2d 432.

A conviction based on insufficient evidence cannot stand, as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia,** 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi,** 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Mussall,** 523 So.2d 1305, 1308-09 (La. 1988). Viewing the evidence in the light most favorable to the state, we cannot find beyond a reasonable doubt that defendant exercised dominion and control over the contraband.

Accordingly, we find that the evidence, even when viewed in the light most favorable to the prosecution, was not sufficient to establish beyond a reasonable doubt the essential elements of the crime of possession with intent to distribute a

controlled dangerous substance.[4] [5] <u>See</u> **Jackson**, 443 U.S. at 319, 99 S.Ct. at 2789. We reverse the conviction and the habitual offender adjudication. We vacate the sentence and order defendant discharged.

**CONVICTION AND HABITUAL OFFENDER ADJUDICATION REVERSED. SENTENCE VACATED. DEFENDANT ORDERED DISCHARGED.**

---

[4] Because we find that defendant was not in possession of the controlled dangerous substance found in the trailer, we do not reach the issue of whether defendant had an intent to distribute the controlled dangerous substance.

[5] Based on our ruling on this assignment of error, we pretermit discussion of the remaining assignments of error.

11