673 So.2d 1187 (1996)
STATE of Louisiana
v.
Harold KIMBROUGH.
No. 94-KA-2141.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 1996.
*1188 Edward Newman, Orleans Indigent Defender Program, New Orleans, for Appellant.
Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, New Orleans, for Appellee.
Before LOBRANO, PLOTKIN and MURRAY, JJ.
LOBRANO, Judge.
Defendant, Harold Kimbrough, was charged by bill of information with simple burglary of an inhabited dwelling, a violation of Louisiana Revised Statute 14:62.2.
Trial was held on June 21 and 23, 1994. Defendant was found guilty as charged.[1] On June 29, 1994, defendant's motion for new trial was heard and denied. On that same day, defendant admitted the allegations in a multiple bill filed by the state. Defendant was then sentenced to serve six (6) years at hard labor as a multiple offender.
FACTS:
On April 5, 1993, Wilbur Roberts returned to his residence at 1341 Lawrence Street to find that it had been burglarized. The burglary was committed during the day while Roberts was at work. An inspection of the premises revealed the perpetrator entered through a rear bathroom window. A VCR, a camera and several items of jewelry were missing. The bedroom had been ransacked.
Roberts asked his girlfriend to telephone the police while he went to a nearby pawn shop to see if any of his stolen property had been pawned. As he returned home, he observed defendant in front of his own residence. Defendant and Roberts were neighbors. Because defendant had no running water, Roberts had given him permission to get water from a faucet located near the window where the break-in occurred. Roberts confronted defendant concerning the burglary. Defendant denied entering Roberts' house. An altercation ensued.
Three calls were made to the police about the burglary. The first officers that arrived, however, were answering a call concerning the altercation between the two men. When they arrived Roberts and defendant were back inside their respective homes. Officer Edward Delery spoke with defendant and Officer Darryl Odom spoke to Roberts. Roberts informed Officer Odom about the burglary which led to the altercation with defendant. Officer Odom inspected the Roberts residence and discovered a footprint in the bathtub. Odom then went to defendant's home. Odom noticed that defendant was wearing sneakers. Defendant allowed Odom *1189 to inspect the bottoms of the sneakers. The bottom of the shoes were similar to the print in the tub.
Another neighbor, Gregory Woods, told both Roberts and the police that he saw defendant walking down a nearby street that morning carrying something in a white plastic trash bag which he did not have when he returned home. Roberts kept white garbage bags in his home. The box containing the bags was found next to where the VCR had been prior to the burglary. When questioned by Officers Odom and Delery, defendant at first denied any knowledge of the burglary stating he had been home all day. Later he changed his story saying he had been out all day seeking employment. Nevertheless, defendant was not arrested at that time.
Subsequently, defendant was arrested on an unrelated municipal charge. While in custody, defendant was interviewed by Detective Kenneth Harris who had been assigned to investigate the burglary. After informing defendant of his rights, defendant told Harris that he wished to give a statement. Defendant admitted that he had burglarized the home and used a white plastic garbage bag to carry the items from the house. He told Harris he took the VCR and the camera to the Fisher Project where he sold the items to a man at 1335 Wall Court, Apt. 2-C for $40.00. He stated he committed the burglary because he was angry at Roberts and needed the money to pay his utility bill.
Based on this statement, Harris obtained a search warrant for 1335 Wall Court, Apt. 2-C. Upon execution of the warrant, the officers found a camera which Roberts later identified as the one taken in the burglary.
Photographs of the shoe print in the bathtub and defendant's shoe sole were taken and submitted into evidence. However, no expert was called to testify as to an exact match. A fingerprint lifted from the broken glass of the bathroom window was positively identified as matching defendant's left thumb print.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) The trial court erred in refusing to suppress defendant's statement to Officer Odom as well as the physical shoe print evidence.
2) The trial court erred in refusing to suppress the confession to Detective Kenneth Harris or the evidence obtained pursuant to the search warrant.
3) The evidence was insufficient to support defendant's conviction.
ASSIGNMENT OF ERROR 1:
Defendant asserts the trial court erred in refusing to suppress his statements to Officer Odom. Specifically, defendant argues that because he was a suspect when first questioned he should have been advised of his rights and that any statements or information given were inadmissible, including allowing the officer to examine his shoe soles.[2]
In State v. Bell, 613 So.2d 744, 745-746 (La.App. 4th Cir.1993), we set forth the following general criteria for the admissibility of a defendant's statement.
"The State has the burden of proving that a statement given by a defendant was freely and voluntarily given, not the product of threats, promises, coercion, intimidation, or physical abuse. (citations omitted) To establish the admissibility of a statement made by an accused person during custodial interrogation, the State must prove that the accused had been advised of his/her Miranda rights, and that he/she waived these rights prior to interrogation. The determination of a statement's admissibility is within a trial court's discretion, and it should not be disturbed unless it is not supported by the evidence." (citations omitted)
In determining whether a person is "in custody" for Miranda purposes, the Federal Fifth Circuit enunciated the following four part test: (1) whether there was probable *1190 cause to arrest the person; (2) the subjective intent of the investigator; (3) the objective belief of the person; and (4) the focus of the investigator. United States v. Carollo, 507 F.2d 50 (5th Cir.1975), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 105 (1975). Louisiana has adopted this test. State v. Thompson, 399 So.2d 1161 (La.1981); State v. Watkins, 526 So.2d 357 (La.App. 4th Cir.1988); State v. Moran, 451 So.2d 48 (La. App. 4th Cir.), writ denied, 456 So.2d 165 (La.1984). The need for Miranda warnings, however, arises not only in situations where a defendant has been arrested, but also in situations where the questioning indicates that a defendant's freedom of action has been deprived in any significant way. See, State v. Menne, 380 So.2d 14 (La.1980), cert. denied, Louisiana v. Menne, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980); Watkins, supra.
In the instant case, the record discloses that the officers first interviewed defendant concerning the altercation between him and Roberts. The officers were unaware of the burglary until after speaking with Roberts about the altercation. Defendant was not detained as a suspect when questioned. Any "detention" that occurred was to determine the facts and circumstances surrounding the altercation. Officer Odom testified that while he accompanied Roberts into the house to investigate the burglary, Officer Delery continued talking with defendant.
While it is arguable that defendant may have become a suspect when he was asked to display the soles of his shoes, there was no intent on the part of the officers to detain him since he was allowed to leave. It was not until after defendant left and other witnesses were interviewed, that defendant became a suspect. Thus, given the record before us, we cannot say that the statements made to Officers Odom and Delery or the display of the shoe soles, were done in a "custodial environment" necessitating the giving of Miranda rights. See, Menne, supra; Thompson, supra; State v. Overton, 596 So.2d 1344 (La.App. 1st Cir.1992), writ den., 599 So.2d 315 (La.1992); State v. King, 563 So.2d 449 (La.App. 1st Cir.), writ den., 567 So.2d 610 (La.1990).
This assignment of error is without merit.
ASSIGNMENT OF ERROR 2:
Defendant asserts that the trial court erred in refusing to suppress his confession to Detective Harris or the evidence obtained through the search warrant because the statement was given without notice to defendant's counsel who had been appointed in connection with the municipal offense. Detective Harris testified that he knew defendant was in custody on a municipal charge when the statement was given. Detective Harris also stated he was aware of the procedures when a defendant is arraigned on a municipal charge including the appointment of counsel if the defendant cannot afford counsel.
This issue was squarely addressed in McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). The defendant was charged with armed robbery. Counsel was appointed. Following his arraignment on that charge, defendant became a suspect in an unrelated murder in another Wisconsin city. The officers investigating that murder interviewed the defendant. After being advised of his rights, the defendant denied any knowledge of the murder. Two days later, the defendant, after being advised of his rights again, signed a waiver of rights form, admitted he participated in the murder and implicated two other people. Two days after this statement, the defendant, after being advised of his rights, gave a second statement implicating himself even more in the murder. The defendant was subsequently charged and convicted of the murder. On appeal, the defendant argued that because he had been appointed counsel to represent him on the armed robbery charge, he should not have been questioned in the absence of counsel with respect to the murder. In ruling against the defendant, the United States Supreme Court found that his Sixth Amendment right to counsel which attached at the time counsel was appointed in the armed robbery case, did not extend to other unrelated cases. The Court noted:
The Sixth Amendment right, however, is offense specific. It cannot be invoked once *1191 for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "`at or after the initiation of adversary judicial criminal proceedingswhether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" (citations omitted) And just as the right is offense specific, so also its Michigan v. Jackson, [475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)] effect of invalidating subsequent waivers in police initiated interviews is offense specific.
"The police have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime] ... [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities ..." (citation omitted)
"Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." (citations omitted) at 501 U.S. at 175-176, 111 S.Ct. at 2207-2208.
In McNeil, the Court differentiated a defendant's Sixth Amendment right to counsel from a defendant's Fifth Amendment rights enunciated in Miranda.[3] Once a suspect invokes his Fifth Amendment right to counsel for interrogation regarding one offense, interrogation must cease and he may not be reapproached and questioned regarding any offense in the absence of counsel. The Court refused, however, to find that the invocation of the Sixth amendment right impliedly invokes the Fifth Amendment right to counsel during subsequent interrogations on unrelated charges. A defendant's Sixth Amendment right to counsel prohibits questioning about the circumstances surrounding the specific charge for which the right attached unless counsel is present at every critical stage of that case.
In State v. Carter, 94-2859 (La. 11/27/95), 664 So.2d 367, our Supreme Court enunciated a less restrictive waiver rule in Sixth Amendment cases. The court held that a defendant can validly waive his or her Sixth Amendment right to counsel at all direct or overt interrogations after the right to counsel has attached. Even though an attorney has already been appointed, a defendant's waiver will be valid as long as it is knowing, intelligent and voluntary.
In the instant case, defendant gave his statement to Detective Harris after he was charged and had counsel appointed on the municipal charge. He could not have been questioned, in the absence of counsel, on the municipal charge. However, defendant has not alleged nor does the record reflect that he exercised his Fifth Amendment right to counsel when questioned about the burglary. In fact, the record shows that defendant's waiver of his Miranda rights prior to being questioned about the burglary was voluntary.
We find no error in the trial court's denial of defendant's motion to suppress the statement given to Detective Harris. Likewise, because defendant's statement was freely and voluntarily given, and there was no invocation of his Fifth Amendment right to counsel, the information given by defendant was validly incorporated into the affidavit for the subsequent search warrant. The seizure of evidence pursuant to that warrant was lawful.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 3:
Defendant appeals his conviction asserting the evidence was insufficient to support a finding of guilt beyond a reasonable doubt.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, *1192 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Simple burglary of an inhabited dwelling is the unauthorized entry of any inhabited dwelling by a person with intent to commit any felony or theft therein. La.R.S. 62.2.
In the instant case, Roberts' home was entered through a bathroom window. After the break-in, various items including a VCR and a camera were missing. Defendant's thumb print was found on the broken window glass. Defendant was seen leaving the area carrying something in a white plastic garbage bag similar to those found in Roberts' home near where the missing VCR had sat. Defendant confessed to the burglary and told Detective Harris the address of the person to whom he sold the VCR and camera. The police recovered the camera pursuant to a valid search warrant. Roberts identified the camera as the one taken from his home. Thus, the evidence was sufficient for a reasonable jury to conclude, beyond a reasonable doubt, that defendant was guilty of the crime charged.
This assignment of error is without merit.
For the following reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] On July 13 and 30, 1993, the trial court heard motions to suppress statements and evidence. The motions were subsequently denied on October 1, 1993. Defendant sought supervisory writs from this Court which were denied on December 27, 1993. This Court ruled that if convicted, defendant had an adequate remedy on appeal. State v. Kimbrough, 93-K-2185 (La.App. 4th Cir. 12/27/93).
[2] Defendant contends that the statements he gave Odom were the basis for Harris deciding to interview him while he was incarcerated on the municipal charge. Thus, says defendant, his statement to Harris was actually "fruit of the poisonous tree" and should also be suppressed.
[3] See, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).