757 So.2d 655 (1999)
STATE of Louisiana
v.
Johnell ROGERS.
No. 98 KA 2501.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Writ Denied June 16, 2000.
*657 Doug Moreau, District Attorney, Prem Burns, Asst. District Attorney, Baton Rouge, Counsel for Plaintiff/Appellee, State of Louisiana.
Laurie White, New Orleans, Counsel for Defendant/Appellant Johnell Rogers.
Before: CARTER, C.J., LeBLANC and PETTIGREW, JJ.
LeBLANC, J.
The defendant, Johnell Rogers, was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1. The defendant pled not guilty and, after trial by jury, was found guilty as charged. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, urging four assignments of error.

FACTS:
On July 9, 1996, the defendant, the victim, and other inmates were housed at the East Baton Rouge Parish Prison. The victim discovered some of his personal belongings were missing, and he was told the items had been taken by the defendant. The victim confronted the defendant, and a fight ensued between the two men. Subsequently, the defendant left the area where the men had been fighting and retrieved a piece of glass. The defendant then returned to the area where the victim was and subsequently stabbed the victim in the throat with the glass. Shortly thereafter, the victim died from his wounds.

*658 ASSIGNMENT OF ERROR NUMBER ONE:

In his first assignment of error, the defendant contends that he was denied his right to a fair trial as he was tried in prison clothing. He further contends that the trial court failed to provide a jury instruction regarding his wearing of prison attire, and defense counsel failed to request such an instruction or object to its omission. Finally, he sets forth that he was denied effective assistance of counsel as his trial counsel failed to confer with him regarding the wearing of prison attire and he failed to object to the trial court's determination that his wearing of prison clothing would not affect his presumption of innocence.
In his brief to this court, the defendant argues that he was compelled to wear his prison clothing at trial as his trial counsel and the trial court had decided what was in his best interest prior to the start of his trial. He claims he consented to wearing the clothing out of his own ignorance because he was informed by the court that the wearing of the clothing would not prejudice him. He asserts he was not afforded an opportunity to confer with counsel regarding his wearing of the garments and that the trial court improperly informed him that it would not matter if he was wearing his prison clothing because the jury would know that he was in prison. The defendant, however, claims his wearing of the prison clothing called more attention to the fact that he was an inmate, that trial counsel failed to act in the defendant's best interest by failing to object, and that he was so prejudiced by his wearing of prison garb that he was denied a fair trial.
Prior to the beginning of the defendant's trial, the following colloquy took place:
The Court: Mr. Rogers, let me talk to you just a minute. Stand up right there if you would, sir. You have a right, I presumewell, I don't know if you have a right, but generally, defendants who are in jail, we try to keep that from the jury and dress them in jail clothes so as not to influence them or, or prejudice the defendant in any way. In this case, your lawyer and I have discussed it and don't really feel that that's necessary because of the fact that they're going to know you're in jail anyway. Do you understand what I am saying?
Mr. Rogers [the defendant]: Yeah.
The Court: He has said that it is okay and I'm going to ask you if it's okay with you. You'll just continue to wear the same type of clothing that you wear everyday while you're in jail?
Mr. Rogers: Ummm
The Court: It's not like they're not going to know. The reason we usually do it is souhthe jury can't be influenced about, oh, this guy is in jail, so he must be a bad person. They're already going to know that about you.
Mr. Rogers:right.
The Court: Do you understand?
Mr. Rogers: Yeah, I understand that part there.
The Court: All right.
Mr. Rogers: It really don't [sic] matter, you know.
The Court: All right, well then you canwe'll, we'll do it this way.
* * * * * *
The Court: All right, my ever observant court reporter has said that I said that you would normally wear jail clothes. Normally, you wouldn't wear jail clothes, but in this case, your lawyer has agreed thatuhor has accepted it and now I suppose you have, that you will wear jail clothes in this case. Is that okay? Is that your understanding?
Mr. Rogers: Yeah.
Compelling a criminal defendant to stand trial in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. La. Const.1974, Art. I, § 16; Estelle v. *659 Williams, 425 U.S. 501, 504-06, 96 S.Ct. 1691, 1693-94, 48 L.Ed.2d 126 (1976); State v. Anderson, 603 So.2d 776, 778 (La. App. 1 Cir.1992). According to Estelle, in situations where an accused is being tried for an offense committed in confinement, or in an attempted escape, courts have refused to find error in trying the defendant in his prison garb as "[n]o prejudice can result from seeing that which is already known." Estelle v. Williams, 425 U.S. at 507, 96 S.Ct. at 1694. Estelle further noted that courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before a jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant against his will to be tried in jail attire as instances arise where a defendant prefers to stand trial in his prison garments as a defense tactic in the hope of eliciting sympathy from the jury. Estelle v. Williams, 425 U.S. at 507-08, 96 S.Ct. at 1694-95. Nonetheless, the failure of a defendant to make a timely objection is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. State v. Anderson, 603 So.2d at 779.
Because the defendant failed to make any type of contemporaneous objection to his wearing of prison clothing at his trial, he is precluded from raising this argument on appeal. See La.C.Cr.P. art. 841. Moreover, after reviewing the defendant's situation, we find that the defendant's assignment of error lacks merit.
In the instant case, the court discussed with the defendant and his counsel the issue of his wearing prison garb during his trial. It appears from the record that defense counsel previously approved of the defendant's wearing prison clothing, and the defendant did not object to the procedure. There is no indication that the defendant was compelled or coerced into wearing his prison garb during the trial. Likewise, we agree with the trial court's statements that, because of the nature of the crime (a murder which took place in the parish prison), the jury would be made aware that the defendant was a prisoner, whether or not he wore prison clothing.
The defendant also complains that the trial court failed to instruct the jury regarding his wearing prison attire. While the trial court did not refer specifically to the defendant's wearing of prison clothing in his instructions, the court did give instructions to the jury at the end of the trial that included the following language:
In most cases, evidence that the defendant was involved in other crimes that he is not on trial for is inadmissible. Also, in most cases the fact that a defendant has been convicted of other crimes is likewise inadmissible. This is so the jury won't convict the defendant for his past activities, but will make their decision strictly on the evidence produced at his trial. In this case, because of the setting of the alleged crime, i.e. the parish prison, it was impossible to keep that information from you.
Therefore, you must remember that the accused is on trial only for the offense with which he is charged. You may not find him guilty of this offense merely because he may have committed another offense. In fact, in your deliberation in this case, you are not to consider the prior convictions of this defendant, nor the fact that he was in prison when this incident occurred. The fact that this incident did occur in prison is not relevant other than as proof of venue.
While this instruction did not specifically mention the defendant's wearing of prison clothing, it did instruct the jurors to avoid the inference that the defendant was a bad person because of his other crimes, which is the reason usually given for not compelling a defendant to stand trial in his prison attire. Additionally, the defendant and defense counsel agreed to the defendant being tried in his prison *660 clothing, and he did not request or suggest that the court give the jury any further instruction regarding this issue. According to La.C.Cr.P. art. 801, a party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such a time as the court may reasonably cure the alleged error. Therefore, the defendant's lack of a contemporaneous objection to the jury instructions and failure to request special instructions precludes appellate review.
The defendant also contends that trial counsel was ineffective for failing to confer with him regarding the detrimental effect of his wearing prison attire, for failing to object to the court's determination that his wearing prison clothing would not affect his presumption of innocence, and for failing to request that the court give an instruction to the jury regarding his wearing of jail attire.
Initially, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1 Cir.1989), writs denied, 559 So.2d 1374 (1990), 604 So.2d 1297 (1992). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1 Cir.), writ denied, 457 So.2d 18 (1984).
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
We are unable to find that trial counsel's performance was deficient. According to the record, the court informed the defendant that normally he would not wear prison clothing during his trial so as not to influence the jury or prejudice the defendant but that his situation was different as the crime took place in jail. The defendant indicated that he understood and agreed to wear his prison clothing. At one point the defendant even stated, "It really don't [sic] matter." Because of the nature of the instant crime, the jury was fully aware that the defendant was in prison, regardless of his clothing. It also appears that counsel and the court had discussed the defendant's situation prior to trial. Consequently, defense counsel was not deficient for failing to object or for failing to counsel the defendant against wearing the clothing. Additionally, the court sufficiently *661 instructed the jury not to allow the defendant's other crimes to affect their decision regarding the instant crime. Hence, defense counsel did not err in failing to request further instructions to the jury from the court regarding the defendant's wearing of prison clothing. Considering the above, we are unable to find that the defendant's trial counsel's performance was deficient. There was no showing made that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO:
In his second assignment of error, the defendant contends he was denied his right to a fair trial as the state prejudiced the defendant by including in its opening argument specific references to other crimes evidence that were not admissible at his trial. In his brief to this court, the defendant argues that the prosecutor made specific references to other crimes evidence that had not been subject to a Prieur hearing and, therefore, had not been ruled as admissible in the defendant's trial. The defendant admits that trial counsel failed to object or make a motion for a mistrial; however, he contends that his rights were so abridged that the issue should be addressed under the federal "plain error doctrine." Although he contends that the trial counsel may not have objected during the state's opening argument because of trial strategy as objecting or moving for a mistrial would only amplify the prejudice to the jury, the defendant also claims that trial counsel was ineffective for failing to move for a mistrial during the prosecutor's opening argument as her statements were of such a prejudicial nature that they infringed upon his constitutional right to a fair trial.
According to the trial transcript, the defendant failed to object to the prosecution's opening statements and, thus, the claim is not reviewable as he is precluded from raising this argument on appeal. La. C.Cr.P. art. 841; See State v. Taylor, 93-2201, p. 4-7 (La.2/28/96), 669 So.2d 364, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Moreover, after reviewing the issues raised by the defendant, we find this assignment of error lacks merit.
In the state's Answer to Motion for Discovery and Inspection, it is noted that at the time of the instant murder the defendant was facing a sentence of life imprisonment as a fourth felony habitual offender, and the state planned to introduce evidence of the defendant's knowledge of his impending life sentence to show motive for the murder. During a subsequent pretrial hearing, the prosecutor stated that notice was given to the defendant in the state's answer that the defendant had been convicted of attempted manslaughter and aggravated burglary and at the time of the instant crime, July 9, and he was set to be sentenced on July 11 to life imprisonment as a fourth felony habitual offender. During the hearing, the prosecutor stated that she intended to introduce evidence of the fact that the defendant had been convicted and was awaiting his anticipated life sentence as at that time of the instant crime. The prosecutor informed the court that immediately before the murder, the defendant told several prisoners who were trying to stop him from committing the murder, "I'm getting life anyway, what difference does it make." The prosecutor stated that she intended to introduce the defendant's status to the jury the same way the state would if he were someone who had committed an escape. During the hearing, defense counsel objected to the evidence being introduced to show motive. The court stated that it did not know how the case could be tried without the evidence being put before the jury and that it would allow the evidence to be presented to the jury.
Subsequently, during her opening statements at the defendant's trial, the prosecutor stated:

*662 Johnell Rogers, on May the 9th of 1996, had been convicted of attempted manslaughter and aggravated burglary. Mr. Rogers was scheduled for sentencing on those charges on July the 11th of 1996, what would be two days after the murder. After he was convicted on May the 9th of 1996, the State of Louisiana, later that month, served notice on this defendant that at the time of his July 11th sentencing, it intended to seek the imposition of a sentence of life imprisonment at hard labor. Mr. Rogers expected to receive a life sentence at the time of his sentencing.
* * * * * *
You'll hear what happened immediately within seconds before the murder, you will hear that other inmates tried to stop Mr. Rogers from taking this man's life. And you will hear that since Johnell Rogers expected to receive a sentence of life imprisonment on July the 11th, he said he wasn't getting out of jail. He had nothing to loose [sic] and he didn't care. And because he was going to get life in prison on July the 11th, he had no problems in taking the life of [the victim] on July the 9th. And you will hear that on July the 11th, Johnell Rogers was, in fact, sentenced to life imprisonment at hard labor ....
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Crochet, 96-1666, p. 4 (La.App. 1 Cir. 5/9/97), 693 So.2d 1300, 1303, writ denied, 97-1547 (La.11/21/97), 703 So.2d 1305.
Evidence of other crimes is generally inadmissible in the guilt phase of a trial unless the probative value of the evidence outweighs its prejudicial effect and unless other safeguards are met. This general rule ensures that a defendant who has committed other crimes will not be convicted of a present offense simply because he is perceived as a "bad person." A conviction should be based on guilt and not character. One important safeguard is advance notice that other crimes evidence will be offered. This prevents surprise and allows a defendant an opportunity to prepare a meaningful defense. State v. Johnson, 94-1379, p. 9-10 (La.11/27/95), 664 So.2d 94, 99.
Louisiana Code of Evidence article 404(B)(1) provides the following exceptions to the general rule of the admissibility of other crimes evidence:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any evidence it intends to introduce at trial for such purposes or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Evidence that constitutes an integral part of the crime, formerly known as res gestae, is admissible without prior notice to the defense. La.C.Cr.P. art. 720; State v. Prieur, 277 So.2d 126, 128 (La.1973).
The instant conviction arises from a murder which took place in the East Baton Rouge Parish Prison. At the time of the murder, the defendant was a prisoner awaiting sentencing on unrelated convictions. At that time, the defendant was considered a fourth felony habitual offender, and he expected to receive a life sentence for his other unrelated convictions. *663 During her opening statements, the prosecutor specifically informed the jury that two days after the instant murder, the defendant received a life sentence for the other crimes he committed and that immediately before the instant murder, the defendant informed other inmates that he was not "getting out of jail" and he had "nothing to [loose]" by killing the victim. (Thus, it is clear and the state contended throughout the proceedings that the defendant's previous convictions and the possibility of his facing a life sentence as a result of those convictions was an integral part of this case.) In its Answer to Motion for Discovery and Inspection, the state notified the defendant of its intent to use evidence of the defendant's sentence for these previous crimes as it was part of res gestae and to show the defendant's motive for murdering the victim.
Additionally, a pretrial hearing was held wherein the prosecutor stated that it was going to introduce evidence of the defendant's other crimes and his sentences for those convictions as an integral part of the crime and to show motive. Defense counsel objected to the use of this evidence to show motive. The court overruled the objection. Thus, the defense was given notice regarding the introduction of this evidence, and defense counsel did object to its use at a pretrial hearing. Considering the above, we are unable to find that the trial counsel's performance was deficient. There was no showing made that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Moreover, we fail to find that an objection by defense counsel during the state's opening statements would have been meritorious as this crime occurred in prison and the defendant, victim, and numerous witnesses were inmates in the prison. The defendant failed to show that an objection by defense counsel would have kept these facts from the jury or a different result would have been obtained. The other crimes evidence was relevant to show motive and also was an integral part of the crime. The introduction of this evidence was not subterfuge for depicting the defendant's bad character. Consequently, we fail to find any "plain error" as claimed by the defendant. We are unable to find that the prosecutor's opening statements and/or the lack of an objection or motion for mistrial by trial counsel infringed upon the defendant's right to a fair trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE:
In his third assignment of error, the defendant contends that trial counsel was ineffective for failing to cross-examine six prosecution witnesses regarding their prior criminal convictions and incentives for testifying, thus, denying him his right to a fair trial. In his brief to this court, the defendant argues that three of the witnesses who testified for the state were given incentives for their testimony, but that his trial counsel did not question these three witnesses or the other witnesses as to whether pending charges were dropped or about the benefits which induced them to testify. The defendant contends that a cursory review of the rap sheet revealed that three of the prosecution witnesses had prior convictions which could have been used to attack their credibility, and that trial counsel should have cross-examined these witnesses in order to expose the jury to these facts from which they could appropriately draw inferences as to the reliability of these witnesses.
According to the trial transcript in the instant case, among the witnesses called by the state to testify were six men who were or had been inmates in the parish prison at the time the instant crime was committed. On direct examination, Alvin Johnson testified that he was an inmate at Dixon Correctional Institute and that he was serving time for convictions of aggravated burglary and extortion. The prosecutor asked Johnson about his other convictions and asked him if it was his understanding that, because of his cooperation *664 in the instant case, the state would file a motion to reduce his sentence by half, which would be the equivalent of getting good time on his seven year sentence. Johnson indicated that that was his understanding. On cross-examination, defense counsel then asked Johnson, "So you're ratting out your partner for three-and-a-half years?" and Johnson responded, "Yes, sir." Defense counsel also asked Johnson to define extortion.
During the direct examination of Joe B. Smith, Jr., he testified that he was on probation for a third offense driving while intoxicated conviction; however, he was incarcerated in the parish prison at the time of the instant crime. When the prosecutor asked Smith if it was his understanding that the state would advise his probation officer of his testimony, Smith indicated that it was. On cross-examination, defense counsel asked Smith if there were any other times that he had been incarcerated. Smith stated that he had been incarcerated in 1994 for aggravated battery. The prosecutor interrupted and asked the court to limit defense counsel's questioning to convictions. The court stated that defense counsel could ask about pending charges. The court later told defense counsel that he could ask the witnesses about any pending deals in exchange for their testimony in the instant case.
Mark Horton, another prosecution witness, testified that he was serving time at Avoyelles Correctional Institute for simple kidnapping and aggravated criminal damage to property, but he was in the parish prison at the time of the instant crime. On direct examination, Horton stated that he was testifying because he wanted to see justice done. Horton and the prosecutor agreed that they had discussed that if Horton ever came up for parole, the state would inform the parole board about his testimony and, if allowed, he was going to be visited by his children and mother.
James Earl Peters testified that he was an inmate at the parish prison at the time of the instant crime. He explained that he was incarcerated for a "domestic fight." Peters stated that he was testifying regarding the instant crime because the murder was not necessary and he was there to tell the truth.
Daniel Melancon testified that he was incarcerated at Phelps Correctional Institute for promoting prostitution; however, he was an inmate in the East Baton Rouge Parish Prison at the time of the instant crime. Melancon agreed that in exchange for his testimony, if he became eligible for parole, the state would inform the parole board of his testimony. James Jackson testified that at the time of the instant crime, he was incarcerated in the parish prison for a rape charge, which was later dismissed.
Although the defendant complains that the defense did not attempt to discredit these witnesses by cross-examining them about their criminal record, we note the prosecutor asked these witnesses about why they were in jail, the crimes they committed, and any deals they may have made in exchange for their testimony. Defense counsel did further question a few of these witnesses regarding their criminal record. Thus, the prosecutor did a thorough job presenting this information to the jury. Additionally, we note that the lack of questioning on certain issues may have been a part of defense counsel's trial strategy, as it is possible that defense counsel only questioned those witnesses whom he felt were vulnerable to impeachment and chose not to belabor the issue where he thought it would not be advantageous.
Considering the above, and based on our review of the record in light of the defendant's claims of ineffective assistance of counsel, we are unable to find that trial counsel's performance was deficient. There was no showing made that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. See Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. *665 at 2064. We find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
In his fourth assignment of error, the defendant contends that his Sixth Amendment right to counsel was violated when the prosecution introduced an inculpatory statement made by him that was obtained without a waiver of his right to counsel. In his brief to this court, the defendant argues that at the time he gave the statement, an attorney-client privilege existed between the defendant and his attorney from his previous convictions for which he had yet to be sentenced. He claims that because he was represented by counsel at the time the crime occurred, he should not have been interrogated as he had a contract with his attorney until he was sentenced for the other crimes. Thus, he claims that his statement was not made knowingly or voluntarily. The defendant further argues that defense counsel was ineffective for failing to object to the introduction of this statement
During his trial testimony, the defendant claimed that he gave a taped statement to the police wherein he denied any involvement in the crime. He stated that he "lied .... because [he] wanted to see [his] attorney, first." However, he testified that the following day he called for the sheriffs officers in order to give them a statement regarding his involvement in the crime.
Initially, we note that the defendant failed to raise this issue during his trial. He did not object to the introduction of the statement, nor did he file or make any motions to suppress the statement. Thus, he waives his right to assert the error on appeal. See La.C.Cr.P. art. 841; see also State v. Walker, 94-0587, p. 7 (La.App 1 Cir. 4/7/95), 654 So.2d 451, 455, writs denied, 95-1124, 95-1125 (La.9/22/95), 660 So.2d 470. Moreover, after reviewing the evidence, we are unable to find that the trial court erred in allowing the introduction of the defendant's statement.
According to the defendant's trial testimony, he initially denied involvement in the crime, but later requested that the officers return in order for him to give them a statement regarding his involvement in the crime. According to his trial testimony, the defendant initially lied about his involvement in the crime because he wanted to talk to his attorney before giving a statement. However, according to his testimony, the defendant did not request an attorney. Although the defendant claims that he should not have been interrogated without counsel, because he was already represented by an attorney for another crime, we disagree.
In McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991), the United States Supreme Court stated that the Sixth Amendment right to counsel is offense specific and cannot be invoked once for all future prosecutions. The McNeil court differentiated a defendant's Sixth Amendment Right to Counsel from a defendant's Fifth Amendment rights enunciated in Miranda. Once a suspect invokes his Fifth Amendment right to counsel for interrogation regarding one offense, interrogation must cease and he may not be reapproached and questioned regarding any offense in the absence of counsel. The court refused, however, to find that the invocation of the Sixth Amendment right impliedly invokes the Fifth Amendment right to counsel during subsequent interrogations on unrelated charges. A defendant's Sixth Amendment right to counsel prohibits questioning about the circumstances surrounding the specific charge for which the right attached unless counsel is present at every critical stage of that case. State v. Kimbrough, 94-2141, p. 7-8 (La.App. 4 Cir. 4/24/96), 673 So.2d 1187, 1191.
In the instant case, the defendant does not allege nor does the record reflect that he invoked his Fifth Amendment right to counsel when questioned about the instant crime. The defendant's Sixth *666 Amendment right to counsel invoked for his prior convictions did not attach for the instant conviction. Therefore, we are unable to find that there was error in admitting the defendant's statement, and we reject the defendant's contention that his trial counsel was ineffective for failing to file a motion to suppress the statement or object to the introduction of the statement based on his claim of a lack of a wavier of his right to counsel. See Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064. We find this assignment of error to be without merit.
CONVICTION AND SENTENCE AFFIRMED.