775 So.2d 1231 (2000)
STATE of Louisiana
v.
Andre PALMER.
No. 00 KA 0216.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*1233 Donald D. Candell, Asst. District Attorney, Gonzales, LA, Counsel for Appellee State of Louisiana.
Frederick Kroenke, La. Appellate Project, Baton Rouge, LA, Counsel for Defendant/Appellant Andre Palmer.
Before: WHIPPLE, FOGG and CRICHTON, JJ.[1]
CRICHTON, Judge Pro Tern.
Defendant, Andre Palmer, was charged by bill of information with armed robbery and attempted first-degree murder, violations of La. R.S. 14:64, and 14:27 and 14:30, respectively.[2] After defendant's first jury trial ended in a mistrial when the jury was unable to reach a verdict, defendant was found guilty as charged of armed robbery following a second jury trial. The trial court sentenced defendant to imprisonment at hard labor for a term of sixty-five years without benefit of parole, probation or suspension of sentence. The court further ordered that the sentence run consecutively to any other sentence defendant was serving. Defendant has appealed, urging two counseled and two pro se assignments of error.
At about 6:00-6:30 p.m. on December 1, 1995, the day of the instant offense, defendant drove over in his Chevrolet Cavalier and picked up his then seventeen-year-old cousin, co-defendant Brunson, at the home of Brunson's sister.[3] Defendant told Brunson they were going to steal a car. They went to an office building where defendant broke into a Honda Accord. After defendant started the car, the two left the scene with Brunson driving the Cavalier and defendant driving the Accord. After arriving in Prairieville, Louisiana, they parked the Cavalier, left in the Accord, and drove past the Side Track Grocery Store (the store) in Prairieville. They parked the Accord at a car wash a short distance behind the store and walked to it. Defendant had a small caliber handgun, and Brunson was armed with a .38 revolver, which he obtained from defendant.
At about 7:45 p.m., Sarah S. Parker stopped at the store to buy a Coke. While Parker was standing in the doorway on her way out, defendant and co-defendant Brunson, both of whom were wearing masks, entered the store with their guns drawn. Defendant put his gun to Parker's face and told her to get back inside the store. She complied and he took her to the back office where she got beneath a desk as he instructed.
When Brunson made his entry, he jumped over the counter and put his gun to the head of Debra Denise Swanson, the store clerk. Brunson handed Swanson a bag and told her to give him the money and that he was not going to shoot her because she was "a sister." She took the money from the cash register and put it in the bag.
Defendant came out of the office armed with his gun and pulled Swanson into the office where he had taken Parker. Defendant told Swanson to open the safe. She told him she could not open it, because she did not have the combination for the safe. Defendant got upset and briefly put the gun to Swanson's mouth and told her again to open the safe. She repeated she did not *1234 have the combination. Defendant then made Swanson get under the desk where she joined Parker.
Meanwhile. Lloyd Daniel Barry, another customer, had entered the store. Defendant came out of the office. Barry saw defendant was armed with a gun and started running for the door. Defendant told Barry: "Hit the floor, mother f_____." Barry did not comply and kept running. Defendant started shooting, firing two or three times, and Barry got shot in his right arm. Barry slipped and fell out the door into the parking lot. Defendant followed and stood over Barry with the gun. Barry took out his wallet and threw it to defendant who caught it and took it. Barry observed someone drive up in the parking lot and saw Brunson exit the store, which apparently provided Barry the opportunity to run to his truck in the parking lot and hide behind the truck. Shortly thereafter, Barry got inside his truck and started driving away.
In the meantime, defendant and Brunson, both of whom were shooting, ran and got into the Accord and started leaving with defendant driving. While they were doing so, defendant began firing shots at Barry's truck. Barry went one way and defendant and Brunson took off in another direction. Defendant and Brunson went back to the Cavalier, parked the Accord, and left in the Cavalier. Defendant dropped Brunson off at the home of Brunson's sister. On the following day, Brunson received about one hundred to one hundred twenty-five dollars from defendant.
About twelve hundred dollars belonging to the owner of the store was taken during the robbery. Additionally, Barry was robbed of forty dollars he had in the wallet that defendant took.
Subsequently, while Brunson was being questioned by Baton Rouge City Police, the subject of the Side Track Grocery Store robbery came up. Ascension Parish Sheriff's Sgt. Mike Toney was contacted and went to Baton Rouge. After Toney gave Brunson Miranda warnings, Brunson made a taped confession to the instant robbery and related defendant's role in the crime. Toney obtained arrest warrants for defendant and Brunson, and their arrests followed.

COUNSELED ASSIGNMENTS OF ERROR NOS. 1 & 2:
In these assignments, defendant contends his sentence is unconstitutionally excessive and, alternatively, if his trial counsel's failure to move for reconsideration of the sentence is found to preclude appellate review of the excessiveness claim, counsel's failure constitutes ineffective assistance of counsel. While conceding that his criminal conduct merits a period of incarceration, defendant argues that as a first felony offender, a sentence of sixty-five years at hard labor without benefit of parole consecutive to any other time he was serving is unconstitutionally excessive. Thus, defendant submits that he was denied effective assistance of counsel, inasmuch as his trial counsel's failure to move for reconsideration of the sentence was deficient performance that prejudiced him.
Initially, we note that the record does not contain a written motion to reconsider sentence and does not reveal that defendant's trial counsel made an oral motion to reconsider sentence. Although the failure to move for reconsideration of sentence ordinarily would preclude our consideration of an excessive sentence argument, in the interest of judicial economy, we choose to consider defendant's excessiveness argument in order to address the claim of ineffective assistance of counsel. See State v. Wilkinson, 99-0803, p. 3 (La. App. 1st Cir.2/18/00), 754 So.2d 301, 303.
The Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing sentence. La.Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the *1235 guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
For the instant offense of armed robbery, defendant was exposed to imprisonment at hard labor for a minimum of five and a maximum of ninety-nine years, without benefit of parole, probation or suspension of sentence. See La. R.S. 14:64(B) (as amended by 1966 La. Acts, Extraordinary Session, No. 5, § 1). Herein, defendant received a sentence of sixty-five years at hard labor without benefit of parole, probation or suspension of sentence.
The trial court ordered and received a presentence investigation (PSI) report and considered the PSI in imposing sentence. The PSI reflects defendant was born on November 7, 1975 and was classified as a first felony offender. The report recommended a sentence of sixty-five years at hard labor running consecutively to any other sentence being served.
In imposing the instant sentence, the trial court took note of defendant's age and first felony offender status and the sentencing recommendation in the PSI. Additionally, the court made specific reference to the circumstance of defendant having shot a customer of the store during the commission of the armed robbery.
We have carefully considered all the evidence contained in the record, including the particular circumstances of defendant's crime, i.e., the robbery of store clerk Debra Denise Swanson, and defendant's additional conduct of pointing a gun at the face of store customer Sarah S. Parker, making Parker go to the back office, shooting and robbing store customer Lloyd Daniel Barry, and firing additional shots at Barry while fleeing the scene. Taking into account the foregoing and the sentencing considerations articulated by the trial court, we find no abuse of sentencing discretion in the imposition of this sixty-five year sentence for this particular crime and this particular offender. Nor do we find the sentence excessive by virtue of the court's decision ordering the sentence served consecutively to any other sentence. Indeed, it was fortuitous that Barry was not more seriously injured and that no one else was injured or killed by defendant's acts of extreme violence during his commission of this armed robbery and while fleeing the crime scene.
Accordingly, even if defendant's trial counsel's failure to move for reconsideration of the sentence constituted deficient performance, defendant clearly suffered no prejudice since his sentence is not excessive. Hence, these assignments lack merit.

PRO SE ASSIGNMENTS OF ERROR NOS. 1 & 2:
In assignment one, defendant contends that the prosecutor made improper comments during the state's closing rebuttal argument to the jury by vouching for the credibility of state witness David Brunson. In assignment two, defendant contends that the prosecutor committed prosecutorial misconduct by failing to correct false testimony given by Brunson that there was no agreement between Brunson and the state for Brunson to receive sentencing leniency for Brunson's participation in the instant offense in exchange for Brunson's testimony at the instant trial. Thus, defendant submits that his due *1236 process rights of the Fourteenth Amendment of the United States Constitution and Article I, § 2 of the Louisiana Constitution were violated.
Notwithstanding defendant's reliance on the federal "plain error doctrine," the transcript of defendant's second trial reflects defendant failed to contemporaneously object or make a motion for mistrial on the basis of either of the pro se claims alleged by him on appeal and, thus, because the claims were not preserved for appellate review, defendant may not raise them on appeal.[4]See La.Code Crim. P. art. 841; State v. Taylor, 93-2201, pp. 4-7 (La.2/28/96), 669 So.2d 364, 367-369, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996); State v. Rogers, 98-2501, pp. 8-9 (La.App. 1st Cir.9/24/99), 757 So.2d 655, 661, writ denied, 99-3526 (La.6/16/00), 764 So.2d 962. Nevertheless, we have chosen to review the claims.

ALLEGED IMPROPER COMMENTS
The alleged improper comments are underscored in the following portion of the state's closing rebuttal argument:
You know, I'm not going to take up for David, and all the inconsistencies in his statement. You know, I do this for a living, and I see a lot of people in this particular situation. He's 17. He's scared. He's charged with a very serious crime, and he may go to jail for the rest of his life for it, too. He tends to leave things out. He tends to maybe put this here, there, and yonder. I truly believe in my heart though, ladies and gentlemen, or I would not have put him on this stand, that he's credible. I truly believe that he's telling the truth. But I know, without a doubt, and you heard the inconsistencies. I'm not going to try to rehabilitate that, you know; but the man's telling the truth. I truly believe he's telling the truth. There's no way in the world that this man could know the facts of this case without being there. Then it's a coincidence that his cousin that was there just happens to be a tall, light skinned black man that all the witnesses described. [underscoring ours.]
While a prosecutor may not give his personal opinion regarding the veracity of a witness, it is permissible for a prosecutor to draw inferences about a witness's truthfulness from matters on the record. See La.Code Crim. P. art. 774; State v. Williams, 96-1023, p. 13 (La.1/21/98), 708 So.2d 703, 715, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998). Taken in context, we find the alleged improper comments were confined to answering defense counsel's closing argument, during which defense counsel strenuously asserted that Brunson's testimony was fraught with inconsistencies and that Brunson was a criminal and a liar unworthy of belief. See La.Code Crim. P. art. 774. While the comments at issue were less than artfully phrased and ill-advised, we also find them to have been based on the evidence and not personal opinion based on anything outside the record. Thus, the prosecutor did not improperly vouch for the credibility of Brunson. See and compare State v. LaCaze, 99-728, pp. 25-26 (La.App. 3rd Cir.12/8/99), 759 So.2d 773, 788.

ALLEGED PROSECUTORIAL MISCONDUCT
In defendant's pro se brief, in support of his allegation that Brunson gave false testimony that there was no agreement between the state and Brunson for sentencing leniency in exchange for Brunson's testimony, defendant sets forth a purported quotation of Brunson's counsel allegedly made in open court during the first trial. Defendant asserts the purported quotation is evidence substantiating the alleged false testimony. However, we are limited in our review to the evidence contained *1237 in the instant record, which does not contain a transcript of the first trial.[5] During Brunson's cross-examination at the instant (second trial), he testified that he had not made any "deal" with the state for his testimony at the second trial. Based on our review of the record, we find nothing in the record supporting the alleged falsity of this testimony by Brunson. As a consequence, the claimed prosecutorial misconduct premised on the alleged falsity of Brunson's testimony is also unsubstantiated.
Accordingly, for the foregoing reasons, these assignments lack merit.
For the reasons assigned, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
WHIPPLE, J., concurs.
FOGG, J., concurs and assigns reasons.
FOGG, J., Concurring.
For the following reasons, I respectfully concur. In his first assignment of error, the defendant asserts that the prosecutor made improper comments during the state's closing rebuttal argument to the jury; those comments are restated in the majority opinion. Unlike the majority, I believe those comments were impermissible under LSA-C.Cr.P. art. 774. However, taking the evidence as a whole, I do not find that the remarks influenced the jury or contributed to the verdict. Therefore, the comments do not constitute reversible error.
NOTES
[1] First Judicial District Court Judge Scott J. Crichton assigned pro tem. by order of the Supreme Court of Louisiana.
[2] Co-defendant David James Brunson was jointly charged in the bill of information. The attempted first-degree murder charge was dismissed, and Brunson's trial was severed on motion of defendant.
[3] Earlier that day, they had been riding around Baton Rouge together before defendant dropped Brunson at the sister's apartment at about 4:00 p.m.
[4] Nor does the record reveal that defendant requested the trial court to admonish the jury to disregard the alleged improper comments.
[5] Accordingly, the purported quotation cannot be considered and was not considered in our review.