GUIDRY, J.
The defendant, Kentreal Jarbar Howard, was charged by bill of information with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1). See also La R.S. 40:964, Schedule II(A)(4). He pled not guilty and, after a trial by jury, was found guilty as charged. The trial court denied the defendant's motion for new trial and motion for post-verdict judgment of acquittal. The State filed a habitual offender bill of information, and the defendant pled not guilty to the allegations therein. After a hearing, the defendant was adjudicated a fourth-felony habitual offender. He was sentenced to thirty years imprisonment at hard labor without the benefit of probation or suspension *72 of sentence.[1] He now appeals, filing one counseled and two separate pro se briefs (pro se brief one and pro se brief two). In his counseled brief, the defendant assigns error to the denial of his motion for continuance to appoint a sanity commission, the sufficiency of the evidence, and the habitual offender adjudication. In both of his pro se briefs, he argues that his constitutional rights were violated due to the inability to confront Agent Joseph Renfro. In pro se brief one, the defendant further assigns error to the constitutionality of the search and seizure and other challenges to the admission of evidence. In pro se brief two, he further asserts that the State committed a Brady violation and prosecutorial misconduct.[2] For the following reasons, we affirm the conviction, habitual offender adjudication, and sentence.
STATEMENT OF FACTS
On April 1, 2015, Lieutenant Brelon Yelverton and Sergeant Kyle Bergeron of the Terrebonne Parish Sheriff's Office (TPSO) warrants division were patrolling the area of Carlos Street in an attempt to locate Joseph Howard, who lived in the area. As they approached 317 Carlos Street, Joseph Howard's known address, a gray Dodge Charger was being driven away from the same location. They questioned an individual who was outside in the yard at the time, and the subject indicated that Joseph Howard had just left in the vehicle. The officers pursued the vehicle and followed it as it entered the Family Dollar Store parking lot, located at 7468 Main Street, at approximately 10:15 a.m. After the driver parked the Dodge Charger, the officers exited their marked unit. Lieutenant Yelverton approached the driver's door and asked the driver for his driver's license, as Sergeant Bergeron approached the passenger side of the vehicle.
While the driver did not provide his driver's license, Sergeant Bergeron recognized him as Kentreal Howard (the defendant), who was also identified by other individuals at the scene, and known as "Kenny Boo." The passenger, Noel Durkins, who provided his driver's license or identification card, exited the vehicle as he was being questioned, but suddenly reentered the vehicle. As the passenger door remained open, Durkins leaned in and grabbed a black bag that was partially unzipped out of the passenger compartment of the vehicle. The officers removed Durkins from the vehicle, and as Durkins threw the bag on the ground, the zipper loosened. The bag landed at the back of the vehicle, and Lieutenant Yelverton placed his foot on the bag as he handcuffed *73 Durkins. As Lieutenant Yelverton addressed Durkins, Sergeant Bergeron picked up the bag and placed it on the trunk of the vehicle. Lieutenant Yelverton instructed the defendant to step back and explained to him that he did not need to be concerned, as they had witnessed everything that happened regarding Durkins' actions.
Lieutenant Yelverton continued to restrain Durkins as the officers observed the contents of the bag, which consisted of several clear baggies that contained rock-like and white powdery substances.[3] As Sergeant Bergeron informed the defendant that he was going to be detained, the defendant quickly grabbed the bag from the trunk and took flight. Some of the contents fell out of the bag, and Sergeant Bergeron pursued the defendant on foot as he ran behind the Family Dollar Store. Lieutenant Yelverton remained with Durkins and the evidence that had fallen on the ground.[4]
SUFFICIENCY OF THE EVIDENCE
In counseled assignment of error number two, the defendant argues that the evidence is insufficient to support the verdict of possession with intent to distribute cocaine. He notes that the evidence shows that Durkins, the passenger, had the black bag of cocaine in his possession and threw it on the ground during police questioning. The defendant further notes that there was eyewitness testimony indicating that the police were being aggressive with the defendant and claims that he knocked the black bag off of the trunk of the car in an act of desperation, claiming that the video does not support police testimony that he grabbed the bag and ran. He argues that the evidence presented by the State failed to refute the possibility that the defendant swatted the bag off of the car in an attempt to destroy the evidence. The defendant argues that a review of the record as a whole indicates that the State failed to prove beyond a reasonable doubt that he had the specific intent to possess with intent to distribute cocaine in this case.
When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements *74 of the offense have been proven beyond a reasonable doubt. When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion of trial error issues as to that crime would be pure dicta since those issues are moot. However, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. If the reviewing court determines that there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused will be granted a new trial, but is not entitled to an acquittal. See State v. Hearold, 603 So.2d 731, 734 (La. 1992).
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV ; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821(B) ; State v. Ordodi, 06-0207, p. 10 (La. 11/29/06), 946 So.2d 654, 660. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. State v. Wright, 98-0601, p. 2 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 00-0895 (La. 11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
To support a conviction for possession with intent to distribute, the State had to prove beyond a reasonable doubt that the defendant: 1) possessed the controlled dangerous substance; and 2) had an intent to distribute the controlled dangerous substance. La. R.S. 40:967(A)(1) ; State v. Young, 99-1264, p. 10 (La. App. 1st Cir. 3/31/00), 764 So.2d 998, 1006. The State is not required to show actual possession of the narcotics by a defendant in order to convict; constructive possession is sufficient. A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. Also, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. However, the mere presence in the area where narcotics are discovered or mere association with the person who controls the drug or the area where it is located is insufficient to support a finding of constructive possession. State v. Smith, 03-0917, p. 6 (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 799. Factors considered in determining whether or not a defendant exercised dominion and control over a drug include: a defendant's knowledge that illegal drugs are in the area; the defendant's relationship with any person found to be in actual possession of the substance; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any *75 evidence that the particular area was frequented by drug users. State v. Harris, 94-0696, pp. 3-4 (La. App. 1st Cir. 6/23/95), 657 So.2d 1072, 1075, writ denied, 95-2046 (La. 11/13/95), 662 So.2d 477.
It is well settled that intent to distribute may be inferred from the circumstances. Factors useful in determining whether the State's circumstantial evidence is sufficient to prove intent to distribute include: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. In the absence of circumstances from which an intent to distribute may be inferred, mere possession of drugs is not evidence of intent to distribute unless the quantity is so large that no other inference is reasonable. Smith, 03-0917 at 7-8, 868 So.2d at 800.
Sergeant Bergeron testified that after he placed the bag on the trunk of the defendant's vehicle and observed its contents, he decided to detain the defendant despite the officers' initial statements to the defendant that he was not in any trouble. Sergeant Bergeron explained that while the defendant was not yet under arrest, he was being detained as a large amount of suspected cocaine was involved, as the defendant was the driver of the vehicle, and because the investigation was on-going. Sergeant Bergeron further testified that once the defendant grabbed the bag off of the back of the vehicle and fled, it immediately became apparent that he had knowledge of its contents and was directly involved in the transport and possible future sale and distribution of the contents of the bag. Sergeant Bergeron yelled at the defendant, telling him to stop and that he was under arrest, as he pursued the defendant in a foot chase. He then deployed the taser to the defendant's upper back as they approached the comer of the Family Dollar Store building. The tasing momentarily effected the defendant as he and Sergeant Bergeron landed on the ground during a brief scuffle. The defendant was able to escape Sergeant Bergeron's grasp, regain his footing, and flee on foot. At that point, Sergeant Bergeron recovered the bag from the ground and picked up the individual baggies of rock-like and a white powdery substance that had fallen along the trail from the trunk to the side of the store as the defendant escaped.
Captain Derrick Collins, of the TPSO narcotics division, testified as an expert in the packaging and distribution of street level narcotics. Captain Collins was not involved in the investigation, but observed and assessed the evidence collected in this case. He noted that the consistency of the evidence appeared to have dissipated as a result of being smashed. He noted that crack cocaine is sold in dosage units, that each dosage unit consisted of .20 grams, and that the evidence consisted of at least 500 dosage units, with a street value of $20 each. The crime lab report indicates the cocaine in evidence weighed 34.86 grams. Considering the amount of cocaine in evidence and the sixteen plastic baggies, Captain Collins concluded that the case involved possession with the intent to distribute as opposed to personal use.
Jewel Vergin knew the defendant, as they grew up together in the same neighborhood. On the day in question, as Vergin was exiting the Family Dollar Store on West Main Street, she saw the defendant's vehicle enter the parking lot followed by *76 a police car. As Vergin approached her vehicle, she asked the defendant, who had parked next to her, whether or not he was okay. At that point, the defendant asked Vergin to inform the police of his real name. Vergin testified that the defendant's nickname was "Kenny Boo," that he wanted the police to be aware of his legal name, and that she complied with his request. Vergin saw, but did not know the passenger who was in the defendant's vehicle at the time. After informing the police of the defendant's name, Vergin decided to wait in her vehicle to make sure that the defendant was okay. She observed the passenger of the defendant's vehicle as he kept getting out of the car, as the police ordered him to stay in the car. After the passenger ignored orders to stay in the car, the police then instructed him to remain outside of the vehicle. She continued to observe as the passenger leaned or stood next to the car, and saw a bag fall "from his [the passenger's] pants leg." She noted that the officer picked up the slightly opened bag and placed it on the trunk of the defendant's vehicle.
According to Vergin, at that time the defendant had his hands up in a "freeze" position as he made statements indicating that the bag did not belong to him and that he did not have anything to do with it. Vergin further testified, "And at this point Kentreal seem like he was, you know, agitated, you know, aggravated, and I guess the police officer thought that he was going to run, so he kind of was very aggressive -- I -- my opinion." She further admitted that the defendant seemed nervous at this point. She indicated that the police attempted to handcuff the defendant by positioning him against the trunk of the vehicle. She became nervous as the police called for backup while the defendant continued to declare his innocence. She added, "But I guess Kentreal felt that he [the police officer] wasn't believing what he was saying, and he knocked the bag off of his car." She testified that the defendant then ran toward the other side of the Family Dollar Store, that the officer pursued him, and that other police units arrived after the defendant fled on foot from the scene. When specifically asked if the defendant ever grabbed the bag, Vergin testified, "No, not that I can remember. No." She further explained, "No, because the police officer had him on the back of the car in an arresting position[,]" when he knocked the bag off of the vehicle. She denied seeing anything in the defendant's hands as he fled from the scene.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Marshall, 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369, cert. denied, 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007). The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261, p. 6 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932.
The verdict rendered herein indicates that the jury inferred possession with the intent to distribute in this case. As noted, the defendant argues on appeal that he knocked the evidence off of the trunk of his vehicle in an attempt to destroy the evidence, denying that he actually possessed it with the intent to later distribute it. However, regardless of whether the defendant quickly grabbed and dropped, or simply knocked the evidence to the *77 ground, the jury could have reasonably inferred joint constructive possession in this case. Not only was the bag initially in the defendant's vehicle and therefore within his access, the defendant's actions showed that he had knowledge of its contents and that his physical proximity was sufficient to remove the bag from the trunk of the vehicle. The expert testimony presented at trial indicated that a large amount of cocaine with a significant street value was recovered in this case. Further, the empty plastic baggies were an indication that the evidence would ultimately be repackaged or additional drugs obtained for distribution. It is well-settled that a jury is free to believe some, none, or all of any witness's testimony. In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See Ordodi, 06-0207 at 14, 946 So.2d at 662.
An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 07-2306, pp. 1-2 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. See State v. Mire, 14-2295, p. 4 (La. 1/27/16), --- So.3d ----, ----, 2016 WL 314814 (per curiam). Based on our careful review of the record, we are convinced that any rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of possession with intent to distribute cocaine. Accordingly, we find that counseled assignment of error number two lacks merit.
MOTION FOR CONTINUANCE TO APPOINT SANITY COMMISSION
In counseled assignment of error number one, the defendant argues that the trial court erred in failing to grant an oral motion for continuance. The defendant notes that after he rejected a plea offer, the defense counsel moved for a sanity commission, indicating that the defendant was not competent, was not making a rational decision, and had been diagnosed with schizophrenia according to a family member. As the defendant further notes, after the trial judge denied a continuance on that basis, the defense counsel moved for a continuance because he was distracted due to "a number of things", including his daughter being born during the week of the trial. The defendant argues that the record supports the defense counsel's concerns regarding the defendant's behavior, citing instances at trial when he was reprimanded by the trial judge for being disruptive in court. The defendant argues that the proceedings show that he was incapable of making a rational decision concerning the plea bargain offer and appeared to have been unable to adequately express his desire to further discuss the plea offer. The defendant contends that the trial court abused its discretion in denying the motion for continuance based on the defense counsel's request for a sanity commission. He contends that he suffered prejudice as he received a sentence that is twice as long as the sentence he would have received under the plea bargain. Thus, the defendant argues that his conviction should be vacated and the matter remanded for a new trial.
*78 Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La. C.Cr.P. art. 641. The two-fold test of capacity to stand trial is whether the defendant: (1) understands the consequences of the proceedings, and (2) has the ability to assist in his defense by consultation with counsel. State v. Bridgewater, 00-1529, p. 14 (La. 1/15/02), 823 So.2d 877, 892, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003) ; See also State v. Fugler, 97-1936, pp. 18-19 (La. App. 1st Cir. 9/25/98), 721 So.2d 1, 16 (citing official comment (b) to Article 641 and State v. Swails, 223 La. 751, 762-63, 66 So.2d 796, 800 (1953) ). The appointment of a lunacy commission is not a perfunctory matter or a ministerial duty of the trial court, nor is it guaranteed to every accused in every case. The fact that the defendant's capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant; rather, he must have reasonable grounds to doubt the defendant's capacity. La. C.Cr.P. art. 643, 644. While a court may receive the aid of expert medical testimony on the issue of competency to proceed, the ultimate decision of capacity rests with the trial court. Bridgewater, 00-1529 at 14, 823 So.2d at 892. The ordering of a sanity commission to inquire into the defendant's present capacity to proceed rests in the sound discretion of the trial court. State v. Folse, 623 So.2d 59, 66 (La. App. 1st Cir. 1993).
In this case, the defendant's oral motion for continuance and to appoint a sanity commission was made on the trial date, just prior to voir dire, after the State offered a plea agreement that would allow the defendant to be sentenced to fifteen years at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant declined the offer, and the defense then moved for the sanity commission. The defense counsel stated that he had been informed by a family member of the defendant that the defendant had a previous diagnosis of schizophrenia. The defense counsel further stated that he did not think that the defendant was competent enough to make a rational decision. In denying the motion, the trial court stated in part, "That's Mr. Howard's decision if he wants to go to trial. The Court is going to deny any Motion for Continuance. At this moment the Court -- Mr. Howard seems to be very lucid. He seems to understand the proceedings that are going on ... No one is saying that it's in his best interest. If he chooses to so to speak roll the dice and go to trial, that's a choice that he makes." The trial court further noted that the defendant had a personal opinion as to what was depicted by the video footage. The trial judge then asked the defendant if he was ready for trial or wanted to accept the plea offer. The defendant stated, "I would like to subpoena my witness. I don't have my witness here ... I didn't grab no bag, I knocked it down off my car ... And my witness saying that, the lady Joy V[e]rgin, she not here.[5 ]" At that point, the defense counsel alternatively moved for a continuance based on distractions during trial week and lack of preparedness, the denial of which is not being contested on appeal.
The granting or denial of a motion for continuance rests within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion.
*79 State v. Brown, 95-0755, p. 3 (La. App. 1st Cir. 6/28/96), 677 So.2d 1057, 1062. We recognize that the motion for continuance in this case was neither made in writing, nor filed at least seven days prior to the commencement of trial as required by La. C.Cr.P. art. 707. An oral motion for a continuance presents nothing for review on appeal. However, where the occurrences that allegedly make the continuance necessary arose unexpectedly, and the defense had no opportunity to prepare a written motion, an appellate court may review the denial of the motion. Brown, 95-0775 at 4, 677 So.2d at 1062.
Herein, the defense counsel stated that a member of the defendant's family informed him of the defendant's previous diagnosis that morning, prior to voir dire. Even assuming that the failure to file a written motion could be excused in this case, we conclude that the trial court did not abuse its discretion in denying the defendant's oral motion for a continuance. The fact that the defendant maintained his innocence and wanted to proceed to trial instead of accepting the plea bargain does not alone indicate that he did not understand the proceedings or was unable to assist in his defense. To the contrary, the defendant understood that he needed the key defense witness to be present and was aware of the substance of her testimony, specifically noting that she would corroborate his version of the facts. Given the presumption of sanity and the trial judge's opportunity to observe the defendant, we conclude that the defendant has failed to demonstrate that the trial judge abused his discretion in denying the motion for the appointment of a sanity commission. Further, under the circumstances herein, there was no abuse of discretion by the trial court in denying the defense counsel's motion for continuance. Thus, we find that counseled assignment of error number one lacks merit.
ALLEGED CONSTITUTIONAL VIOLATIONS
In assignments of error numbers one (in part), three (in part), and four of pro se brief one, and assignment of error number one of pro se brief two, the defendant alleges constitutional violations.[6] He specifically contends that his Sixth Amendment constitutional right of confrontation, and Fourth Amendment right against an unreasonable search and seizure were violated. He complains that Agent Joseph Renfro was not present for the trial or available for cross-examination. He further argues that there was insufficient probable cause to seize the evidence.
Violation of Right of Confrontation Claim
At trial, the evidence report and request for scientific analysis, both by Agent Renfro, were admitted during the testimony of the TPSO evidence custodian, Edgar Authement. We note that after the State introduced and offered the forms into evidence, the defense attorney specifically stated that there was "[n]o objection" to their admission.
Under La. C.Cr.P. art. 841 and La. C.E. art. 103(A)(1), a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of the occurrence. Since *80 the defendant failed to lodge a contemporaneous objection during trial to the admission of the forms in question, he is precluded from raising the issue on appeal. State v. Johnson, 06-1235, p. 7 (La. App. 1st Cir. 12/28/06), 951 So.2d 294, 299.
Moreover, the defendant's assertion that his right to confrontation was violated is baseless. In Crawford v. Washington, 541 U.S. 36, 68-69, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), the Supreme Court held that, where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. However, the Crawford Court drew a distinction between testimonial and nontestimonial statements, and confined its holding to testimonial evidence. Crawford, 541 U.S. at 61-68, 124 S.Ct. at 1370-74. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law ... as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. The Court noted that historically, in a criminal context, "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial," citing, as an example, business records. Crawford, 541 U.S. at 56, 124 S.Ct. at 1367. Herein, the information in the evidence report and request for scientific analysis was routine, descriptive, and nonanalytical; i.e., it was nontestimonial in nature and thus did not trigger the Crawford mandate for cross-examination pursuant to the Confrontation Clause. Nevertheless, as stated, Authement, the evidence custodian, testified at trial and was cross-examined by the defense. In accordance with the above, we find no denial of confrontation. Thus, we now turn to the defendant's Fourth Amendment argument.
Unreasonable Search and Seizure Claim
At the outset, we note that the defendant filed two written motions to suppress in this case, specifically a motion to suppress evidence and a motion to suppress identification. In the motion to suppress evidence, the defendant alleged that the police lacked probable cause in support of the arrest and seizure of the evidence, and that he was not in actual or constructive possession of the evidence in question. At the hearing on the pretrial motions, the trial court first ruled on the preliminary examination. In connection with the preliminary examination, the State introduced the application for the arrest warrant. In finding that there was probable cause to continue to hold the defendant in custody, the trial court recounted the facts and circumstances of the case.
The trial court specifically noted that after the police stopped the defendant's vehicle, the passenger (Durkins) dropped the black bag containing a "large amount of Crack Cocaine." As the trial court further noted, video footage from Lieutenant Yelverton's body camera showed the defendant "taking the evidence off the trunk and fleeing on foot." The trial court ruled that for the purposes of the preliminary hearing, there had been sufficient probable cause to arrest the defendant. Once the trial court made the probable cause determination, the defense counsel objected to the ruling, but declined the trial court's offer to pursue any other pretrial motions in the case.
Thus, the issue raised in this appeal, whether an unreasonable search and seizure occurred in this case, was not articulated by the defendant or addressed by the State or the trial court during the *81 hearing below.[7] As the proponent of the motion to suppress evidence, it was incumbent on the defendant to obtain a ruling on his motion prior to proceeding to trial. Otherwise, it may be considered that the motion has been abandoned. State v. Wagster, 361 So.2d 849, 856 (La. 1978) ; State v. Austin, 11-0122, p. 3 (La. App. 1st Cir. 6/10/11), 99 So.3d 1008, 1009, n.2 (per curiam). A new basis or ground for the motion to suppress cannot be articulated for the first time on appeal. This is prohibited under the provisions of La. C.Cr.P. art. 841 since the trial court would not be afforded an opportunity to consider the merits of the particular claim. See State v. Williams, 02-1030, 02-0898, p. 7 (La. 10/15/02), 830 So.2d 984, 988. Thus, the defendant herein is precluded from asserting his motion to suppress evidence for the first time on appeal. Considering the foregoing, the remaining abovementioned arguments asserted in assignments of error numbers one, three, and four of pro se brief one, and assignment of error number one of pro se brief two lack merit.
OTHER CHALLENGES TO THE ADMISSIBILITY OF THE EVIDENCE
In pro se brief one, the defendant raises additional challenges to the admissibility of the evidence seized in this case. Specifically, in assignments of error numbers one (in part) and three (in part) of pro se brief one, he argues the State presented insufficient evidence as to the chain of custody of the evidence. He claims that the original custodian of the drugs was never determined, and that the evidence sent to the crime lab was "uninvestigated." In assignment of error number two of pro se brief one, the defendant further argues that the State presented conflicting evidence of the weight of the drugs. The defendant contends that while the crime lab report indicates that the evidence weighed 34.86 grams, the arrest warrant indicates that the evidence weighed 51.7 grams. He argues that the evidence did not provide a "conclusive grade of severity as to the [statute] pertaining to the alleged offense."
At the outset, we note that the crime lab report was admitted without objection at trial, and the police were subject to direct and cross-examination regarding the weight of the drugs and the jury was free to accept or reject that testimony. We further note that the version of the statute in effect at the time of the defendant's offense does not mandate an increase in punishment based on the weight of the evidence. See La. R.S. 40:967(B)(4)(b) (prior to amendment by 2017 La. Acts No. 281, § 2). Finally, we note that the defendant did not object to the admission of the evidence on the basis of the chain of custody. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of the occurrence. Since the defendant failed to lodge a contemporaneous objection to the admissibility of the evidence on this basis below, he is precluded from raising these issues on appeal. State v. Johnson, 06-1235, p. 7 (La. App. 1st Cir. 12/28/06), 951 So.2d 294.
*82 Moreover, a sufficient foundation for the introduction of demonstrative evidence is laid if the evidence establishes that it is more probable than not that the object is the one connected to the case. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. A continuous chain of custody need not be established if the evidence as a whole establishes more probably than not that the object introduced is the same as the object originally seized by police officers. State v. Dilosa, 01-0024, p. 7 (La. App. 1st Cir. 5/9/03), 849 So.2d 657, 665, writ denied, 03-1601 (La. 12/12/03), 860 So.2d 1153. Herein, Authement testified that he was in charge of the care and custody of the evidence and of the delivery and retrieval of evidence submitted to the crime lab. He further testified that the evidence report was used for tracking the chain of custody. Authement personally transported the evidence in this case to the crime lab. Thus, the record in this case substantiates that it was more probable than not that the evidence admitted during trial was the same evidence seized on the day in question. We find no merit in the above arguments regarding the admissibility of the evidence presented by the defendant in assignments of error numbers one, two, and three of pro se brief one. Accordingly, all of the arguments raised in pro se brief one, in addition to assignment of error number one of pro se brief two, have been addressed herein and found meritless.
ALLEGED BRADY VIOLATION
In assignment of error number two of pro se brief two, the defendant claims that the State committed a Brady violation. The defendant seemingly argues that the scientific analysis report and/or Agent Renfro's affidavit in support of the arrest warrant constituted Brady evidence as the documents showed that there was a conflict regarding the weight of the evidence seized in this case. He again notes that the crime lab report indicates that the evidence weighed 34.86 grams, while Agent Renfro reported that the evidence weighed 51.7 grams. Citing Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the defendant notes that the Brady rule encompasses evidence that impeaches the testimony of a witness when the reliability or credibility of the witness may determine guilt or innocence.
The rule established in Brady v. Maryland is that upon request, the State must produce evidence that is favorable to the accused where it is material to guilt or punishment. Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97. See also State v. Bright, 02-2793, p. 5 (La. 5/25/04), 875 So.2d 37, 41. Failure to do so violates a defendant's due process rights. Bright, 02-2793 at 5, 875 So.2d at 41. The Brady rule applies to both exculpatory and impeachment evidence, including evidence that impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) ; Bright, 02-2793 at 5, 875 So.2d at 41 ; State v. Knapper, 579 So.2d 956, 959 (La. 1991). A Brady violation occurs when the "evidentiary suppression undermines confidence in the outcome of the trial." State v. Garcia, 09-1578, p. 51 (La. 11/16/12), 108 So.3d 1, 37, cert. denied, 570 U.S. 926, 133 S.Ct. 2863, 186 L.Ed.2d 926 (2013) (quoting Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) ). However, even where disclosure is made during trial, it will be considered timely if the defendant is not prejudiced.
*83 State v. Eley, 15-1925, pp. 10-11 (La. App. 1st Cir. 9/16/16), 203 So.3d 462, 473, writ denied, 16-1844 (La. 9/6/17), 224 So.3d 982. In order to be entitled to a reversal for failure to timely provide exculpatory information, the defendant must show that he was prejudiced. Discovery violations do not provide grounds for reversal unless they have actually prejudiced the defendant. State v. Garrick, 03-0137, p. 5 (La. 4/14/04), 870 So.2d 990, 993 (per curiam).
A discovery violation involving the State's failure to disclose exculpatory evidence does not require reversal as a matter of the Due Process Clause unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. Garrick, 03-0137 at 5, 870 So.2d at 993. While late disclosure, as well as nondisclosure, of exculpatory evidence may deprive the defendant of a fair trial, in both instances the impact on the defense "must be evaluated in the context of the entire record." State v. Kemp, 00-2228, p. 7 (La. 10/15/02), 828 So.2d 540, 545 (per curiam).
At the outset, we note that the defendant fails to show the State withheld material exculpatory evidence in violation of Brady. The record indicates that the State provided the defendant with open file discovery and there is no indication that the open file discovery was violated. We note that Agent Renfro's affidavit was admitted into evidence without objection at the preliminary examination hearing, which took place almost six months before the trial. The affidavit was not admitted at trial. Further, as previously noted herein, the crime lab report was admitted at trial without objection. A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the alleged error. La. C.Cr.P. art. 841(A) ; State v. Cambrice, 15-2362, p. 1 (La. 10/17/16), 202 So.3d 482, 483 (per curiam). Because the defendant herein failed to make any type of contemporaneous objection raising this issue below, he is precluded from raising this argument on appeal. Moreover, as previously noted, the police were subject to direct and cross-examination regarding the weight of the drugs, and the jury was free to accept or reject that testimony. Thus, the defendant has further failed to assert or show any prejudice in regards to his Brady violation claim. Considering the foregoing, we find no merit in assignment of error number two of pro se brief two.
ALLEGED PROSECUTORIAL MISCONDUCT
In assignment of error number three of pro se brief two, the defendant argues that the prosecutor made improper statements in his opening statement and closing argument to the jury. At the outset, the defendant acknowledges that there was no contemporaneous objection by the defense to the statements at issue. However, the defendant argues that the prosecutor's conduct constituted plain error in contending that even in the absence of an objection, this court may reverse the conviction and remand for a new trial. The defendant argues that the prosecutor showed bad faith and inflicted his opinions towards the case to persuade the jury.
Insofar as the necessity of an objection to preserve these issues for appellate review, the defendant appears to be relying upon Federal Rule of Criminal Procedure 52(b), which provides that "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." While federal law provides for plain error, Louisiana law *84 does not.[8] The Federal Rules of Criminal Procedure are not applicable in the instant case. See State v. Rubens, 10-1114, p. 33 (La. App. 4th Cir. 11/30/11), 83 So.3d 30, 52-53, writs denied, 12-0374 (La. 5/25/12), 90 So.3d 410 & 12-0399 (La. 10/12/12), 99 So.3d 37, cert. denied, 568 U.S. 1236, 133 S.Ct. 1595, 185 L.Ed.2d 591 (2013). Notwithstanding the defendant's reliance on the federal plain error rule, the transcript of the trial reflects that the defendant failed to contemporaneously object or make a motion for mistrial on the basis of the pro se prosecutorial misconduct claims alleged by him on appeal. Thus, because the claims were not preserved for appellate review, the defendant may not raise them on appeal. See La. C.Cr.P. art. 841 ; State v. Taylor, 93-2201, pp. 3-7 (La. 2/28/96), 669 So.2d 364, 367-69, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996) ; State v. Palmer, 00-0216, p. 7 (La. App. 1st Cir. 12/22/00), 775 So.2d 1231, 1236, writs denied, 01-0211 (La. 1/11/02), 807 So.2d 224 & 01-1043 (La. 1/11/02), 807 So.2d 229 ; State v. Rogers, 98-2501, p. 9 (La. App. 1st Cir. 9/24/99), 757 So.2d 655, 661, writ denied, 99-3526 (La. 6/16/00), 764 So.2d 962. Moreover, we find no merit in the defendant's claims.
At the outset, we note that the jurisprudence shows that prosecutors are afforded broad latitude in choosing opening statement and closing argument and trial tactics. See State v. Draughn, 05-1825, p. 44 (La. 1/17/07), 950 So.2d 583, 614, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007) ; State v. Martin, 539 So.2d 1235, 1240 (La. 1989) (closing arguments referring to "smoke screen" tactics and defense "commi-pinkos" held inarticulate but not improper); State v. Copeland, 530 So.2d 526, 545 (La. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989) (prosecutor's waving a gruesome photo at jury and urging jury to look at it if they become "weak-kneed" during deliberations held not improper); State v. Patton, 10-1841, p. 16 (La. App. 1st Cir. 6/10/11), 68 So.3d 1209, 1221. Louisiana Code of Criminal Procedure article 766 confines the scope of the opening statement by the State to the explanation of the nature of the charge and evidence by which the State expects to prove the charge. Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. Further, the State's rebuttal shall be confined to answering the argument of the defendant. See La. C.Cr.P. art. 774. The trial judge has broad discretion in controlling *85 the scope of opening and closing arguments, and this court will not reverse a conviction on the basis of improper closing argument unless thoroughly convinced that the remarks influenced the jury and contributed to the verdict. See State v. Prestridge, 399 So.2d 564, 579-80 (La. 1981). See also Draughn, 05-1825 at 44-45, 950 So.2d at 614.
The defendant first cites a portion of the prosecutor's opening statement wherein he references the defendant as a "drug dealer" with "enough material to go out and deal on the streets." The prosecutor further stated that the defendant took the bag in order to "protect his product...because he got money invested in that product." The prosecutor added, "I suggest to you that what you're going to hear from the stand is that not only was this Cocaine, not only did the defendant both constructively and actively possess that Cocaine, but he's also a drug dealer." As to the prosecutor's closing argument, the defendant cites the prosecutor's reference to Noel Durkins' guilty plea to possession with intent to distribute cocaine before stating, "Great. Fantastic. We got one of the two drug dealers in this case off the street." As the defendant further notes, in his closing argument, the prosecutor further argued that the defendant was not improperly charged in this case, stating in part, "...the crime in this case is not obstruction, the crime in this case is not resisting arrest. The crime in this case is the intent to sell Cocaine."
The trial court in the instant case instructed the jury that opening statements and closing arguments are not evidence. The trial court further stated, "You must determine whether or not a fact has been proven only from the evidence presented or from a lack of evidence...As jurors, you alone shall determine the weight and credibility of the evidence." Much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed by the trial judge that arguments of counsel are not evidence. State v. Mitchell, 16-0834, p. 8 (La. App. 1st Cir. 9/21/17), 231 So.3d 710, 719.
The comments referred to in the defendant's pro se brief are not outside the proper scope of opening statement or closing argument. Even if we were to find them outside of the proper scope of opening statement or closing argument, no relief premised on such comments would be warranted. The defendant was convicted based on substantial testimonial and video evidence that supported the finding by the trier of fact that the State proved every element of the offense beyond a reasonable doubt. It does not appear that any prosecutorial comments contributed to the verdict. Further, we fail to find any "plain error" as claimed by the defendant. We are unable to find that the prosecutor's opening statement and/or the lack of an objection or motion for mistrial by trial counsel infringed upon the defendant's right to a fair trial. Thus, assignment of error number three of pro se brief two is without merit.
HABITUAL OFFENDER ADJUDICATION
In counseled assignment of error number three, the defendant argues that the State failed to present sufficient evidence to establish that he was convicted of all of the prior offenses enumerated in the habitual offender bill of information. He specifically argues that the State failed to carry its burden of proving that he was the same individual who was convicted in case numbers 385615 and 532957. As to the identity evidence presented for case number 385615, the defendant notes that Bernadette Pickens testified that she remembered *86 the defendant from drug court although the proceeding occurred fifteen years earlier. The defendant also notes that as to case numbers 385615 and 532957, the State presented testimony of Hester Serrano, a probation and parole officer who did not supervise the appellant in either case. The defendant notes that while Serrano indicated that she identified the defendant based on paperwork in her file, the documents were entered into evidence over the defense counsel's objection. The defendant argues that there was no evidence that Serrano was the custodian of the records and further notes that Serrano admitted that she did not discuss the cases with the defendant. The defendant also argues that there is no indication in the record that Serrano was an expert in fingerprint examination, noting that Serrano testified that the fingerprints contained in her records matched the defendant's fingerprints. The defendant argues that as the State failed to prove beyond a reasonable doubt that he was the person who was convicted in case numbers 385615 and 532957, the habitual offender adjudication and enhanced sentence must be vacated.
If the defendant denies an allegation of the habitual offender bill of information, the burden is on the State to prove the existence of the prior guilty plea and that the defendant was represented by counsel when the plea was taken. State v. Shelton, 621 So.2d 769, 779 (La. 1993). If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one that reflects a colloquy between the judge and the defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. Shelton, 621 So.2d at 779-80.
If the State introduces anything less than a perfect transcript, for example, a guilty plea form, a minute entry, an imperfect transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin [9] rights. Shelton, 621 So.2d at 780 ; State v. Bickham, 98-1839, p. 4 (La. App. 1st Cir. 6/25/99), 739 So.2d 887, 890. The purpose of the rule of Shelton is to demarcate sharply the differences between direct review of a conviction resulting from a guilty plea, in which the appellate court may not presume a valid waiver of rights from a silent record, and a collateral attack on a final conviction used in a subsequent recidivist proceeding, as to which a presumption of regularity attaches to promote the interests of finality. See State v. Deville, 04-1401, p. 4 (La. 7/2/04), 879 So.2d 689, 691 (per curiam).
In attempting to establish both the prior felony conviction and that the defendant is the same person convicted of that felony, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver's license number, sex, race, and date of birth. The Habitual Offender Law, La. R.S. 15:529.1, does not require the State to use a specific type of evidence, including *87 fingerprints, to carry its burden at a habitual offender hearing, and prior convictions may be proved by any competent evidence. State v. Payton, 00-2899, pp. 6-9 (La. 3/15/02), 810 So.2d 1127, 1130-32 ; see State v. Lindsey, 99-3302, p. 7 (La. 10/17/00), 770 So.2d 339, 344 n.3, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). The Habitual Offender Law provides for the presumption of regularity. See La. R.S. 15:529.1(D)(1)(b). Moreover, "a multiple bill proceeding is in the nature, merely, of an enhancement of penalty rather than of a prosecution for a crime." State v. Hill, 340 So.2d 309, 311 (La. 1976).
At the hearing in this case, for case number 385615 in Terrebonne Parish, the State submitted a certified copy of the bill of information, a copy of the minute entry dated January 23, 2003, a certificate of counsel, and a certified copy of the record of a pleading entitled the drug court agreement. As to case number 452504 in Lafourche Parish (not contested on appeal), the State introduced a certified copy of the bill of information, pleadings entitled acknowledgement of receiving advice of rights, a sentence pleading, and minutes for April 28, 2009. And, as to case number 532957 in Terrebonne Parish, the State introduced a certified copy of the bill of information, a certified copy of the minutes dated June 25, 2009, a document entitled waiver of constitutional rights, a certificate of defense counsel and district attorney, and an order. As to case number 672242 in Terrebonne Parish (also uncontested on appeal), the State submitted a certified copy of the bill of information, a copy of the fingerprints, a waiver of rights and plea form, and the minute entry of April 15, 2014.
Hester Serrano, a Louisiana probation and parole officer, testified that she supervised the parole and probation of the defendant and identified him in court. She noted that the defendant's case was transferred to her on November 18, 2013, and that at the time the defendant was under supervision for the Lafourche Parish case under docket number 452504. She noted that the defendant's parole was revoked on April 11, 2014, and that she played an active role in the request for the parole revocation based on a new arrest. Serrano further testified that the defendant was released on parole again on May 23, 2014, under docket number 672242 in Terrebonne Parish, and that she supervised the defendant for his parole in that case during his entire release period. Serrano confirmed that she did not actively supervise the defendant during his parole on case number 385615 or 532957. However, she confirmed that once she was assigned to the defendant's case, she reviewed the various records of probation and parole to determine the felony class for the defendant, and to verify his arrest and dispositions. Serrano confirmed that she brought to court the records for case number 385615, including two parole certificates, booking photography, a parole revocation memorandum, revocation minutes, and a bill of information.
As noted, the defense counsel objected to the introduction of the documents based on the lack of evidence that Serrano was the evidence custodian. Before allowing the documents to be entered into evidence, the trial court questioned Serrano as to whether she had personally reviewed the documents in connection with her felony classification of the defendant and whether she had gone through the process of determining whether the documents pertained to the same individual that she was supervising, the defendant, in docket numbers 452504 and 672242. Based on Serrano's confirmation of the above, the trial court overruled the objection and allowed the State to submit the evidence. Serrano further testified that she had fingerprint evidence *88 for each case and that the Automated Fingerprint Identification System (AFIS) was used to verify that each case involved the same person, the defendant.
Bernadette Pickett of the Terrebonne Parish District Attorney's Office reviewed the documents in State's exhibit S-3 relative to docket number 385615 and confirmed that her signature was on the bill of information. She stated that there was an original charge that would not allow the defendant to enter drug court and that it was determined that the bill of information would be amended. Pickett further identified the plea agreement for drug court in that case.
While the defendant argues that the State failed to prove his identity "beyond a reasonable doubt," as noted by the Louisiana Supreme Court, "[i]n order to prove the defendant is a habitual offender, the State need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony." Payton, 00-2899 at 5-6, 810 So.2d at 1130 (quoting State v. Chaney, 423 So.2d 1092, 1103 (La. 1982) ). As detailed above, the State introduced pertinent court minutes evidencing the taking of the pleas, the bills of information relating to predicate offenses, and the testimony of the probation and parole officer confirming her supervision of the defendant for some of the offenses and review and verification of the documents for all of the cases. The identifying information presented by the State was consistent. The minutes show that the defendant was represented by counsel. We find that the State met its burden of proof under Shelton, and the burden shifted to the defendant to present affirmative evidence of an infringement of his rights or an irregularity in the proceedings. The defendant did not introduce any evidence to show an infringement of his rights or an irregularity in the proceedings. Therefore, the defendant failed to carry his burden of proof under Shelton. The record supports the fourth-felony habitual offender adjudication. Thus, we find no error in the adjudication. Considering the foregoing, counseled assignment of error number three lacks merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
Theriot, J. concurs

The habitual offender status is based on several predicate offenses, including a conviction of possession of cocaine on January 13, 2002, convictions of simple escape, possession with intent to distribute cocaine, and possession with intent to distribute MDMA on April 28, 2009, another conviction of possession of cocaine on June 25, 2009, and a conviction of attempted possession of cocaine on April 16, 2014. While it is stated otherwise in the minutes, we note that the trial court did not restrict parole in imposing the enhanced sentence. When there is a discrepancy between the minutes and transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Thus, the trial court failed to restrict parole on the first two years of the sentence as required by the statute for the underlying offense. See La. R.S. 40:967(B)(4)(b) (prior to amendment by 2017 La. Acts No. 281, § 2). However, as State v. Williams, 00-1725, p. 10 (La. 11/28/01), 800 So.2d 790, 798-99 and La. R.S. 15:301.1(A) provide, the "without benefit" provision of La. R.S. 40:967(B)(4)(b) is self-activating.

Some of the assignments of error in the defendant's pro se briefs contain overlapping and indistinct arguments. While some of the arguments were not fully developed, this court has addressed the pro se briefs in accordance with the arguments generally stated therein.

The evidence was subsequently submitted to and tested at the Louisiana State Police Crime Lab. Among the submitted evidence were three clear plastic baggies that were tested and determined to contain 34.86 grams of cocaine and a black zipper bag containing sixteen empty clear plastic baggies.

Lieutenant Yelverton was equipped with a body camera and the footage was entered into evidence and played during the trial. Early on, as Lieutenant Yelverton restrained and verbally accosted Durkins, the officers assured the defendant that he was not in any trouble as the defendant repeatedly declared that he was not involved. After rummaging through the bag, Sergeant Bergeron stepped away from the trunk and toward the defendant, informing the defendant that he needed to detain him as a precaution. As depicted in the video, the defendant abruptly removed the bag from the trunk of the vehicle and took flight. As his actions took place in mere seconds, it is difficult to discern whether the defendant held the bag before it landed on the ground. The defendant was briefly out of view before reentering the camera's view for a split second (partially obstructed by the vehicle), as he darted around the vehicle and passed the Family Dollar Store.

Vergin ultimately appeared at trial, testifying out of turn as she had been hospitalized. She testified consistent with the defendant's claim as presented herein above.

As stated, some of the assignments of error in the defendant's pro se briefs contain overlapping and indistinct arguments.

After finding probable cause on the preliminary examination, the trial court asked the defense attorney, "are we finished with the motions on 718,291?" The defense attorney responded positively, stating, "Yes, sir, Judge." The trial court asked the defense attorney if he wanted to argue the motion to suppress identification and the defense attorney declined. The State then briefly opposed the motion to suppress identification, and the trial court subsequently denied the same. The trial court noted that all of the pretrial issues in this case had been resolved before proceeding with pretrial motions in a separate case under a different docket number. The trial court did not rule on the motion to suppress evidence for the record.

Louisiana Code of Criminal Procedure article 920(2) contains an exception to the contemporaneous objection rule which provides that an error patent, i.e., "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence," shall be considered on appeal. Additionally, the Louisiana Supreme Court has carved out jurisprudential exceptions to the rule requiring contemporaneous objection. State v. Montoya, 340 So.2d 557 (La. 1976) ; State v. Williamson, 389 So.2d 1328 (La. 1980) ; State v. Green, 493 So.2d 588 (La. 1986) ; State v. Arvie, 505 So.2d 44 (La. 1987). The Supreme Court reasoned that these exceptions are similar to the federal "plain error" rule. State v. Thomas, 27,507 (La. App. 2 Cir. 12/6/95), 665 So.2d 629, writ denied, 96-0119 (La. 4/8/96), 671 So.2d 333. Errors that affect substantial rights of the accused are reviewable by the appellate court, even absent contemporaneous objection, to preserve the "fundamental requirements of due process." Williamson, supra ; Green, supra. The exception to the contemporaneous objection rule is not a "plain error rule of general application." Arvie, supra. To fall under the exception, the error must "cast substantial doubt on the reliability of the fact-finding process." Id. ; State v. Langston, 43,923, pp. 12-13 (La. App. 2d Cir. 2/25/09), 3 So.3d 707, 715-16, writ denied, 09-0696 (La. 12/11/09), 23 So.3d 912.

Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969)